790 So.2d 830 (2001)
In the Matter of R.B., A Minor, by and Through Her Next Friend, V.D.,
v.
STATE of Mississippi.
No. 2001-CA-00361-SCT.
Supreme Court of Mississippi.
July 19, 2001.
*831 Sarah C. Jubb, Sardis, Attorney for Appellant.
Office of the Attorney General by Wayne Snuggs, Attorneys for Appellee.
EN BANC.
SMITH, J., for the Court:
¶ 1. R.B., an unmarried and unemancipated minor, filed her petition pursuant to Miss.Code Ann. §§ 41-41-51 to 63 (1993) and UCCR 10.01, for a waiver of parental consent for an abortion. The Chancery Court of Panola County denied her waiver of consent, finding that R.B. was not mature and well-informed enough to make the abortion decision on her own, and that having an abortion would not be in R.B.'s best interest. Counsel representing R.B. filed a Request for Certification in the chancery court for the purpose of appealing the Final Judgment, and the record was certified on March 2, 2001, and received by this Court on March 5, 2001. By order, we affirmed the chancery court on March 6, 2001, with opinion to follow. We find no error and therefore, affirm the chancery court.

FACTS
¶ 2. R.B. is a seventeen-year-old unmarried female who is pregnant and desires to have an abortion in order to terminate her pregnancy. R.B.'s parents are both deceased, and she has been in the physical custody of her grandmother since her parents' death. R.B. ascertained that she was pregnant on February 28, 2001. The doctor told R.B. that she was twelve weeks pregnant as of February 28, 2001.
¶ 3. R.B. is of limited education, having attended school through the eighth grade. She feels that an abortion is in her best interest because she desires to complete her GED and go to Job Corps. She does not believe that she can "get on" with her life with a baby. However, she is about to graduate from the GED program shortly, and admits, when questioned, that the pregnancy would not interfere with the GED program.
¶ 4. R.B. called the Memphis physician's office where the procedure would take place and talked to a nurse. According to R.B., no medical personnel told her about the risks associated with an abortion, nor has she specifically asked. R.B. has no knowledge of the risks of infection, hemorrhage, or breast cancer. She is not aware that an abortion could cause danger to subsequent pregnancies and infertility. Further, she does not know the name of the physician who would perform the procedure, and she has made no investigation into the background or qualifications of the physician. She is concerned primarily with the cost of the abortion and indicates that she picked the Memphis clinic over the Jackson clinic because the Memphis clinic is cheaper. She has no knowledge of what the word "viability" means.
¶ 5. R.B. believes the father of the child to be B.H. B.H. has neither encouraged *832 nor discouraged her from undergoing the abortion. He has, however, offered to help pay for the abortion. At the present time, she is no longer dating B.H.
¶ 6. R.B. was unaware until she appeared in court that medical assistance benefits may be available for prenatal care, childbirth, and neonatal care. She was also unaware that there are services provided by public and private agencies which provide pregnancy prevention counseling. She did acknowledge that the father of the child would be liable under the laws of this state to support their child.
¶ 7. R.B.'s grandmother ("V.D.") testified that R.B. had a hard time adjusting to her mother's death. According to V.D., R.B. "is real sensitive. She thinks about things way too much." V.D. believes that R.B. would never adjust to giving up a child if she carried it nine months. She admits, however, that R.B. will likely never forget if she terminates the pregnancy. Although V.D. told R.B. that she would have to take care of the baby on her own, she never told R.B. that she could not live with her any longer.

ANALYSIS
¶ 8. Our Court is called upon to determine what the Legislature intended in Mississippi's parental consent statute when it succinctly stated that "[c]onsent shall be waived if the courts finds either (a) that the minor is mature and well-informed enough to make the abortion decision on her own; or (b) that performance of the abortion would be in the best interest of the minor." Miss.Code Ann. § 41-41-55(4). We are not called upon to decide the constitutionality or wisdom of abortion. Instead, our sole function in this case is to interpret and apply the statute enacted by our Legislature. The brevity of the language of the requirement of the bypass procedure does not mean that it is insubstantial.
¶ 9. An important procedural issue involves the standard of review that appellate courts are to apply in this type of case. Because section 41-41-53 is silent on this issue, this Court looks to the standard of review we apply to other chancery court decisions.
¶ 10. A limited standard of review is employed by this Court in reviewing decisions of a chancellor. McNeil v. Hester, 753 So.2d 1057, 1063 (Miss.2000); Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997) (citing Carrow v. Carrow, 642 So.2d 901, 904 (Miss.1994)). This Court has repeatedly stated that it will examine the record and accept the evidence reasonably tending to support the findings made below, along with all reasonable inferences which may be drawn therefrom and which favor the chancery court's finding of fact. In re Estate of Taylor, 609 So.2d 390, 392 (Miss.1992); Williams v. Evans, 547 So.2d 54, 58 (Miss.1989); Clark v. Myrick, 523 So.2d 79, 81 (Miss.1988). The chancery court sitting as the trier of fact has the primary authority and responsibility to assess the credibility of witnesses. Bryan v. Holzer, 589 So.2d 648, 659 (Miss.1991). Moreover, where we find substantial evidence in the record supporting the findings of fact, we will seldom reverse, whether those findings be of ultimate fact or evidentiary fact. Mullins v. Ratcliff, 515 So.2d 1183, 1189 (Miss.1987).
¶ 11. As this Court has stated in previous decisions, these standards are general and elusive of precise meaning and application, and this Court has struggled to articulate precisely what is meant. See In re Estate of Taylor, 609 So.2d at 392. This Court has held that the findings of a chancellor are upheld unless those findings are clearly erroneous or an erroneous legal standard was applied. Hill v. Southeastern *833 Floor Covering Co., 596 So.2d 874, 877 (Miss.1992). Furthermore, this Court has held that a finding of fact is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." In re Estate of Taylor, 609 So.2d at 392 (quoting UHS-Qualicare, Inc. v. Gulf Coast Community Hosp., Inc., 525 So.2d 746, 754 (Miss.1987)). The standard of review employed by this Court for review of a chancellor's decision is abuse of discretion. Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc., 716 So.2d 200, 204 (Miss.1998). If substantial evidence exists to support the chancellor's finding of fact, broad discretion is afforded his determination. McEwen v. McEwen, 631 So.2d 821, 823 (Miss.1994).
¶ 12. In reviewing a Massachusetts parental consent to abortion statute, the United States Supreme Court recognized three reasons justifying the conclusion that the constitutional rights of children cannot be equated with those of adults: "the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing." Bellotti v. Baird, 443 U.S. 622, 634, 99 S.Ct. 3035, 3043, 61 L.Ed.2d 797 (1979) (plurality opinion). The Court noted that, "during the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgement to recognize and avoid choices that could be detrimental to them." Id. at 635, 99 S.Ct. at 3044. The parents' role is essential to teach, to guide, and to inspire young people so they can be mature, socially responsible citizens. Id. at 638, 99 S.Ct. at 3045. Keeping these principles in mind, the Court concluded that state parental consent laws requiring pregnant minors to obtain consent from one or both parents were constitutional as long as an alternative procedure, such as a judicial bypass, was available for obtaining an abortion without parental consent. Id. at 643, 99 S.Ct. at 3048. In such a judicial bypass proceeding, a pregnant minor is entitled to show either: (1) that she is mature and well-enough informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes; or (2) that even if she is not able to make this decision independently, the desired abortion would be in her best interest. Id. at 643-44, 99 S.Ct. at 3048.
¶ 13. The Supreme Court provided little further detail to the judicial bypass procedure. The Court vaguely wrote, "[n]ot only is it difficult to define, let alone determine, maturity, but also the fact that a minor may be very much an adult in some respects does not mean that his or her need and opportunity for growth under parental guidance and discipline have ended." Id. at 643 n. 23, 99 S.Ct. at 3048. While the Court has not explicitly defined "maturity" in the context of parental notification or consent statutes, it observed, as noted supra, that "minors often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them." Id. at 635, 99 S.Ct. at 3043-44 (emphasis added & footnote omitted). With regard to the determination of maturity, the Court concluded that the peculiar nature of the abortion decision requires the opportunity for case-by-case evaluations of the maturity of pregnant minors. Id. at 643, n. 23, 99 S.Ct. at 3048. Additionally, the Court was concerned with the pregnant minor being informed of "immediate and long-range consequences." Id. at 640, 99 S.Ct. at 3046. Moreover, the Court recognized the need for the minor to obtain "adequate counsel and support from the attending physician at an abortion clinic," as well as the necessity of the minor to *834 seek the care of an expert and ethical doctor. Id. at 641, 99 S.Ct. at 3047.
¶ 14. In light of Bellotti, this Court held that Mississippi courts were not required to provide the same level of protection to minors as to adults, and that the Mississippi two-parent law is constitutional because the state has a legitimate interest in protecting the health of its minors. Pro-Choice Miss. v. Fordice, 716 So.2d 645, 659 (Miss.1998). Echoing the language of the United State Supreme Court, we stated, "[t]hose minors who lack the requisite maturity to make the long-impacting decision to have an abortion need their parents' guidance, and those who are able to make a fully informed choice alone have the option of obtaining a waiver of parental consent through the judicial bypass proceeding." Id. This Court was noticeably silent interpreting Miss.Code Ann. §§ 41-41-55 in Fordice and has had no occasion, until the case at bar, to define and determine the meaning of "mature," "well-informed," and "best interest."
¶ 15. "Maturity," "well-informed," and "best interests" are broad terms, and ones that are difficult to define. In not defining such terms, the United States Supreme Court has seen fit to leave that task to the discretion of the state trial judges. If a minor appears before a judge and tells the judge about her life, the judge presumably will be able to recognize her relative "maturity," whether she is "well informed" and whether her "best interests" would be served by obtaining an abortion.
¶ 16. There might be an instance where the courts would need to employ each of the criteria involved in the multi-step process adopted by many of our sister states. See, e.g., Ex parte Anonymous, 664 So.2d 882 (Ala.1995); In re T.P., 475 N.E.2d 312, 315 (Ind.1985); In re Doe, 126 N.C.App. 401, 485 S.E.2d 354, 358 (1997); In re Doe, 19 S.W.3d 249, 255-57 (Tex.2000); In re Doe, 19 S.W.3d 346, 360 (Tex.2000). However, to impose such detailed standards from this Court for every future case is to layer the law as to make it more difficult for a chancellor to freely decide the issue.
¶ 17. Giving weight to the fact that the judge below saw and heard the two witnesses, we independently conclude that the minor has failed to demonstrate that she is mature and well-informed enough to make the abortion decision on her own, nor has she proven that termination of the pregnancy would be in her best interest. Finding that the chancellor thoughtfully considered the evidence before him and correctly decided the case in denying the abortion, we should not second guess his decision or add verbiage to it.
¶ 18. The record reflects that R.B. was not aware of the medical risks associated with the abortion, the danger to subsequent pregnancies, or the possibility of future infertility. She knew neither the name, the background nor the qualifications of the physician who was to be performing the abortion. She was unaware that medical assistance benefits may be available for prenatal care, childbirth, and neonatal care. She was also unaware of services offered by public and private agencies such as pregnancy prevention counseling. Further, there was testimony from R.B.'s grandmother indicating R.B.'s emotional fragility, and the possible ramifications an abortion might have on her mental well-being.
¶ 19. R.B. has failed to persuade us that she is mature enough to handle the decision on her own. The record does not indicate that the minor is capable of reasoned decision-making and that she has considered her various options. Rather, the evidence shows that R.B.'s decision is the product of impulse.

*835 CONCLUSION

¶ 20. The chancellor did not abuse his discretion, and his ruling is upheld. Based on these reasons, we affirm the judgment of the chancery court.
¶ 21. AFFIRMED.
PITTMAN, C.J., MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. EASLEY, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY WALLER AND COBB, JJ. BANKS, P.J. DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.
EASLEY, Justice, Concurring:
¶ 22. Ever since the abomination known as Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), became the law of the land, the morality of our great nation has slipped ever so downwards to the point that the decision to spare the life of an unborn child has become an arbitrary decision based on convenience. This is exactly the factual situation of the case before this Court. In this case, the pregnant minor's only thought as to the consequences of having an abortion is that raising a child would be an inconvenience. Abortion should never serve as a substitute for birth control.
¶ 23. The record does not reflect that the minor gave any real thought as to the long-term effects, risk involved or alternatives. No evidence was presented that having a baby would place the minor in any physical danger. The State has a duty and statutory obligation to protect all life including prenatal life.
¶ 24. How long before the right to decide the life span of the gravely ill or elderly also becomes a question of mere inconvenience? As guardians of justice, our decision should be made without regard to its popularity. It is our responsibility to take a stand. Each person has a moral responsibility to protect those of our society who are not able to protect themselves.
¶ 25. How can it be a felony or misdemeanor to injure an unborn child on one hand while the practice of abortion continues in our state? Miss.Code Ann. § 97-3-37(1) and (2) (2000) makes it a felony to injure an embryo or fetus. However, Mississippi statutes, Miss.Code Ann. §§ 41-41-51 to 63 (1993) provide for an abortion under the facts at hand. How can you explain this blatant inconsistency?
¶ 26. There are numerous private, faith-based, and public agencies in place ready to assist the natural mother through the variety of options available, including adoption. Many children have been given the greatest gift of life through adoption and the outreach of concerned family members and caring individuals. An abortion is a final act which can never be undone should the petitioner later have regrets or circumstances change. How many minors can be expected to fully weigh this crucial decision from which there is no return?
¶ 27. For these reasons, I concur with the majority in affirming the chancery court's decision to deny this abortion.
WALLER and COBB, JJ., join this opinion in part.
BANKS, Presiding Justice, Dissenting:
¶ 28. I am compelled to dissent to the disposition of this case because it is my view that under the circumstances the grandmother is sufficiently imbued with the characteristics of a parent such that court interference with her consent is not warranted.
*836 ¶ 29. Though the majority relegates this discussion to a footnote because formal legal guardianship was never obtained, Mississippi has long recognized that under the doctrine of in loco parentis, "in the place of a parent," one assumes the status and obligations of a parent. The rights, duties, and liabilities of one standing in loco parentis, in fact, are the same as those of a natural parent. Farve v. Medders, 241 Miss. 75, 81, 128 So.2d 877, 879 (1961). Though, unlike other jurisdictions, see Ga. Code Ann. § 15-11-112(a)(1)(c) ( 1999); Mo Ann. Stat. § 188.028 (1996); N.D. Cent.Code § 14-02.1-03 (1997), our parental consent statute for abortions does not expressly list a person standing in loco parentis among those who may give consent to abortions, in several other statutes governing the welfare of minors, persons standing in loco parentis may give consent. See Miss.Code Ann. § 93-1-5 (1994) (obtaining marriage licenses); Id. § 37-49-5 (1996) (applying for educational loans); Id. § 41-19-205 (1993) (for admittance into mental and illness centers); Id. § 41-37-25 (1993) (before autopsies may be performed).
¶ 30. Whether the in loco parentis relationship exists is a matter of intent and depends upon the circumstances of the particular case. Id. We have before stated, however, that any person who "takes a child of another into his home and treats it as a member of his family, providing parental supervision, support, and education as if it were his own child, is said to stand in loco parentis." W.R. Fairchild Constr. Co. v. Owens, 224 So.2d 571, 575 (Miss. 1969). It is my view that "[w]hen both parents of a minor child are dead, and no legal guardian of the person has been appointed, the grandparent, who takes the child into his home and actually stands in loco parentis to the child becomes the natural guardian...." 1 Joseph H. Beale on Conflict of Laws. § 39.1, at 222 (1935). Clearly, R.B.'s grandmother has become so here.
¶ 31. Moreover, Miss.Code Ann. § 93-13-13 (1994) which governs the appointments of guardians, expressly sets out that minors over the age of fourteen (14) can select their guardian. R.B. is seventeen (17) and has lived with her grandmother since her parents' death. As the next of kin is generally preferred when appointing guardians, Allen v. Peete, 25 Miss. 29, 31 (1852), the chancery court need only have asked if she wanted her grandmother appointed.
¶ 32. Since, and even prior to, the death of her parents, R.B. has lived with her grandmother. For eight years, her grandmother raised, supported, and provided for her education. After learning of the pregnancy and discussing the other alternatives, she testified that she consented because she believed it was in her granddaughter's best interest. Having witnessed first hand her granddaughter's difficulty in adjusting to the death of her mother, she believed abortion was the better choice because R.B. could not adjust to "giving up a child if she carried it nine months...." She also believed that though she was mature enough to make this decision, a baby would hinder her ability to complete her education, and once she was gone, she would be without help. Right or wrong, the decision was between them. Therefore, I would reverse.
McRAE, P.J., joins this opinion.
McRAE, Presiding Justice, Dissenting:
¶ 33. This is a no contest matter. R.B. has no living parents or legal guardian, and her custodial parent (grandparent), V.D., gives her consent to the abortion. R.B. has no one left from whom to obtain consent besides her grandmother. In addition, R.B. testified that the abortion procedure *837 would take place in Memphis, Tennessee, and these laws are controlling, not the laws of our state. Accordingly, I dissent.
¶ 34. Miss.Code Ann. § 41-41-53(3)(1993) states:
A minor who elects not to seek or does not obtain consent from her parents or legal guardian under this section may petition, on her own behalf or by next friend, the chancery court in the county in which the minor resides or in the county in which the abortion is to be performed for a waiver of the consent requirement of this section pursuant to the procedures of Section 41-41-55.
¶ 35. This statute presupposes that the abortion will be performed in this state, and it has no authority outside of this state. If R.B. is to get the abortion in Tennessee, then those laws are applicable, not the laws of Mississippi. Both of R.B.'s parents are dead, and she does not have a legal guardian. She has been living with her grandmother, V.D., since 1993, who stands in loco parentis. R.B. has complied with the above statute as her grandmother helped R.B. bring this matter before the chancery court as R.B.'s next friend. V.D. also testified at the proceedings that she thinks an abortion would be in R.B.'s best interest. R.B. and the custodial parent (grandparent) are not at odds about this decision. Since R.B. has no one left from whom she may obtain the proper consent as required by § 41-41-53 and since her grandmother gives her consent to the procedure, the chancellor's decision should be reversed and R.B. should be granted this waiver, but only if the abortion is to be done in Mississippi.
¶ 36. The majority makes a subjective conclusion that she is not mature enough to consent, but when a seventeen-year-old is asked to waive constitutional rights in a criminal case, the majority never looks at the maturity of the minor. See Eskridge v. State, 765 So.2d 508, 511 (Miss.2000) (capital murder case in which seventeen-year-old's confession and subsequent guilty plea were affirmed); Clemons v. State, 733 So.2d 266, 269 (Miss.1999) (fourteen-year-old defendant voluntarily gave confession and intelligently waived his rights); see also Woodham v. State, 779 So.2d 158, 161 (Miss.2001) (validity of sixteen-year-old defendant's confession was affirmed; "[T]he age of the minor is seldom per se conclusive in deciding whether a confession was freely and voluntarily given." (citing In re W.R.A., 481 So.2d 280, 286 (Miss.1985)).
¶ 37. The foregoing criminal case law stands in stark contrast with the language now cited by the majority. "[D]uring the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them." (citing Bellotti v. Baird, 443 U.S. 622, 634, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979)). "Not only is it difficult to define, let alone determine, maturity, but also the fact that a minor may be very much an adult in some respects does not mean that his or her need and opportunity for growth under parental guidance and discipline have ended." Id. at 643 n. 23.
¶ 38. To put the preceding quotation in context, the United States Supreme Court prefaced it with the following:
Indeed, considering her probable education, employment skills, financial resources, and emotional maturity, unwanted motherhood may be exceptionally burdensome for a minor. In addition, the fact of having a child brings with it adult legal responsibility, for parenthood, like attainment of the age of majority, is one of the traditional criteria for the termination of the legal disabilities of minority. In sum, there are few situations in *838 which denying a minor the right to make an important decision will have consequences so grave and indelible.
Bellotti v. Baird, 443 U.S. at 642, 99 S.Ct. 3035.
¶ 39. Furthermore, the position now taken by the majority is wholly inconsistent with the majority's recent position in In re J.M.M., No. 1999-CA-01346-SCT, ___ So.2d ___, 2001 WL 723191 (Miss. June 28, 2001). In that case, a sixteen year old girl concealed her pregnancy until the day she gave birth in her parents' home. Her father, having just learned of the pregnancy, told her that she could not bring the baby into their home. The adoption agency was contacted, and that very day visited the sixteen-year-old mother at her hospital bedside. The next day, as she was discharged, an employee from the agency met her in the parking lot of the hospital and took custody of J.M.M. The adoption was finalized a mere 25 days after the birth. The majority went on to hold that the mother was not under undue influence, and that she knowingly and voluntarily waived her parental rights without so much as a guardian ad litem to speak for the child or her.
¶ 40. J.M.M. is irreconcilable with the case at bar, wherein the majority denies R.B. the right to an abortion because her decision is the "product of impulse." It is unclear to me how we can say that a sixteen-year-old under obvious and severe strain is mature enough to make the decision to forfeit her child within days of giving birth, while on the other hand saying that a seventeen-year-old who has had months to make her decision is not mature enough.
¶ 41. The majority fails to recognize that the abortion will take place in Tennessee and that our laws are inapplicable in this matter. Even so, Miss.Code Ann. § 41-41-53 provides the manner in which R.B. may bring her petition, and R.B. complied with these requirements.
¶ 42. For the above reasons, I dissent.