SMITH, J.,
for the Court:
¶ 1. R.B., an unmarried and unemanci-pated minor, filed her petition pursuant to Miss.Code Ann. § § 41-41-51 to 63 (1993) and UCCR 10.01, for a waiver of parental consent for an abortion. The Chancery Court of Panola County denied her waiver of consent, finding that R.B. was not mature and well-informed enough to make the abortion decision on her own, and that having an abortion would not be in R.B.’s best interest. Counsel representing R.B. filed a Request for Certification in the chancery court for the purpose of appealing the Final Judgment, and the record was certified on March 2, 2001, and received by this Court on March 5, 2001. By order, we affirmed the chancery court on March 6, 2001, with opinion to follow. We find no error and therefore, affirm the chancery court.

FACTS

¶ 2. R.B. is a seventeen-year-old unmarried female who is pregnant and desires to have an abortion in order to terminate her pregnancy. R.B.’s parents are both deceased, and she has been in the physical custody of her grandmother since her parents’ death. R.B. ascertained that she was pregnant on February 28, 2001. The doctor told R.B. that she was twelve weeks pregnant as of February 28, 2001.
¶ 3. R.B. is of limited education, having attended school through the eighth grade. She feels that an abortion is in her best interest because she desires to complete her GED and go to Job Corps. She does not believe that she can “get on” with her life with a baby. However, she is about to graduate from the GED program shortly, and admits, when questioned, that the pregnancy would not interfere with the GED program.
¶ 4. R.B. called the Memphis physician’s office where the procedure would take place and talked to a nurse. According to R.B., no medical personnel told her about the risks associated with an abortion, nor has she specifically asked. R.B. has no knowledge of the risks of infection, hemorrhage, or breast cancer. She is not aware that an abortion could cause danger to subsequent pregnancies and infertility. Further, she does not know the name of the physician who would perform the procedure, and she has made no investigation into the background or qualifications of the physician. She is concerned primarily with the cost of the abortion and indicates that she picked the Memphis clinic over the Jackson clinic because the Memphis clinic is cheaper. She has no knowledge of what the word “viability” means.
¶ 5. R.B. believes the father of the child to be B.H. B.H. has neither encouraged *832 nor discouraged her from undergoing the abortion. He has, however, offered to help pay for the abortion. At the present time, she is no longer dating B.H.
¶ 6. R.B. was unaware until she appeared in court that medical assistance benefits may be available for prenatal care, childbirth, and neonatal care. She was also unaware that there are services provided by public and private agencies which provide pregnancy prevention counseling. She did acknowledge that the father of the child would be liable under the laws of this state to support their child.
¶ 7. R.B.’s grandmother (“V.D.”) testified that R.B. had a hard time adjusting to her mother’s death. According to V.D., R.B. “is real sensitive. She thinks about things way too much.” V.D. believes that R.B. would never adjust to giving up a child if she carried it nine months. She admits, however, that R.B. will likely never forget if she terminates the pregnancy. Although V.D. told R.B. that she would have to take care of the baby on her own, she never told R.B. that she could not live with her any longer.

ANALYSIS

¶ 8. Our Court is called upon to determine what the Legislature intended in Mississippi’s parental consent statute when it succinctly stated that “[cjonsent shall be waived if the courts finds either (a) that the minor is mature and well-informed enough to make the abortion decision on her own; or (b) that performance of the abortion would be in the best interest of the minor.” Miss.Code Ann. § 41-41-55(4). We are not called upon to decide the constitutionality or wisdom of abortion. Instead, our sole function in this case is to interpret and apply the statute enacted by our Legislature. The brevity of the language of the requirement of the bypass procedure does not mean that it is insubstantial.
¶ 9. An important procedural issue involves the standard of review that appellate courts are to apply in this type of case. Because section 41^11-53 is silent on this issue, this Court looks to the standard of review we apply to other chancery court decisions.
¶ 10. A limited standard of review is employed by this Court in reviewing decisions of a chancellor. McNeil v. Hester, 753 So.2d 1057, 1063 (Miss.2000); Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997) (citing Carrow v. Carrow, 642 So.2d 901, 904 (Miss.1994)). This Court has repeatedly stated that it will examine the record and accept the evidence reasonably tending to support the findings made below, along with all reasonable inferences which may be drawn therefrom and which favor the chancery court’s finding of fact. In re Estate of Taylor, 609 So.2d 390, 392 (Miss.1992); Williams v. Evans, 547 So.2d 54, 58 (Miss.1989); Clark v. Myrick, 523 So.2d 79, 81 (Miss.1988). The chancery court sitting as the trier of fact has the primary authority and responsibility to assess the credibility of witnesses. Bryan v. Holzer, 589 So.2d 648, 659 (Miss.1991). Moreover, where we find substantial evidence in the record supporting the findings of fact, we will seldom reverse, whether those findings be of ultimate fact or evidentiary fact. Mullins v. Ratcliff, 515 So.2d 1183, 1189 (Miss.1987).
¶ 11. As this Court has stated in previous decisions, these standards are general and elusive of precise meaning and application, and this Court has struggled to articulate precisely what is meant. See In re Estate of Taylor, 609 So.2d at 392. This Court has held that the findings of a chancellor are upheld unless those findings are clearly erroneous or an erroneous legal standard was applied. Hill v. Southeast *833 ern Floor Coveting Co., 596 So.2d 874, 877 (Miss.1992). Furthermore, this Court has held that a finding of fact is “dearly erroneous” when “although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.” In re Estate of Taylor, 609 So.2d at 392 (quoting UHS-Qualicare, Inc. v. Gulf Coast Community Hosp., Inc., 525 So.2d 746, 754 (Miss.1987)). The standard of review employed by this Court for review of a chancellor’s decision is abuse of discretion. Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc., 716 So.2d 200, 204 (Miss.1998). If substantial evidence exists to support the chancellor’s finding of fact, broad discretion is afforded his determination. McEwen v. McEwen, 631 So.2d 821, 823 (Miss.1994).
¶ 12. In reviewing a Massachusetts parental consent to abortion statute, the United States Supreme Court recognized three reasons justifying the conclusion that the constitutional rights of children cannot be equated with those of adults: “the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing.” Bellotti v. Baird, 443 U.S. 622, 634, 99 S.Ct. 3035, 3043, 61 L.Ed.2d 797 (1979) (plurality opinion). The Court noted that, “during the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgement to recognize and avoid choices that could be detrimental to them.” Id. at 635, 99 S.Ct. at 3044. The parents’ role is essential to teach, to guide, and to inspire young people so they can be mature, socially responsible citizens. Id. at 638, 99 S.Ct. at 3045. Keeping these principles in mind, the Court concluded that state parental consent laws requiring pregnant minors to obtain consent from une or both parents were constitutional as long as an alternative procedure, such as a judicial bypass, was available for obtaining an abortion without parental consent. Id. at 643, 99 S.Ct. at 3048. In such a judicial bypass proceeding, a pregnant minor is entitled to show either: (1) that she is mature and well-enough informed to make her abortion decision, in consultation with her physician, independently of her parents’ wishes; or (2) that even if she is not able to make this decision independently, the desired abortion would be in her best interest. Id. at 643-44, 99 S.Ct. at 3048.
¶ 13. The Supreme Court provided little further detail to the judicial bypass procedure. The Court vaguely wrote, “[n]ot only is it difficult to define, let alone determine, maturity, but also the fact that a minor may be very much an adult in .some respects does not mean that his or her need and opportunity for growth under parental guidance and discipline have ended.” Id. at 643 n. 23, 99 S.Ct. at 3048. While the Court has not explicitly defined “maturity” in the context of parental notification or consent statutes, it observed, as noted supra, that “minors often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them.” Id. at 635, 99 S.Ct. at 3043-44 (emphasis added & footnote omitted). With regard to the determination of maturity, the Court concluded that the peculiar nature of the abortion decision requires the opportunity for case-by-case evaluations of the maturity of pregnant minors. Id. at 643, n. 23, 99 S.Ct. at 3048. Additionally, the Court was concerned with the pregnant minor being informed of “immediate and long-range consequences.” Id. at 640, 99 S.Ct. at 3046. Moreover, the Court recognized the need for the minor to obtain “adequate counsel and support from the attending physician at an abortion clinic,” as well as the necessity of the minor to *834 seek the care of an expert and ethical doctor. Id. at 641, 99 S.Ct. at 3047.
¶ 14. In light of Bellotti, this Court held that Mississippi courts were not required to provide the same level of protection to minors as to adults, and that the Mississippi two-parent law is constitutional because the state has a legitimate interest in protecting the health of its minors. Pro-Choice Miss. v. Fordice, 716 So.2d 645, 659 (Miss.1998). Echoing the language of the United State Supreme Court, we stated, “[tjhose minors who lack the requisite maturity to make the long-impacting decision to have an abortion need their parents’ guidance, and those who are able to make a fully informed choice alone have the option of obtaining a waiver of parental consent through the judicial bypass proceeding.” Id. This Court was noticeably silent interpreting Miss.Code Ann. §§ 41-41-55 in Fordice and has had no occasion, until the case at bar, to define and determine the meaning of “mature,” “well-informed,” and “best interest.”
¶ 15. “Maturity,” “well-informed,” and “best interests” are broad terms, and ones that are difficult to define. In not defining such terms, the United States Supreme Court has seen fit to leave that task to the discretion of the state trial judges. If a minor appears before a judge and tells the judge about her life, the judge presumably will be able to recognize her relative “maturity,” whether she is “well informed” and whether her “best interests” would be served by obtaining an abortion.
¶ 16. There might be an instance where the courts would need to employ each of the criteria involved in the multi-step process adopted by many of our sister states. See, e.g., Ex parte Anonymous, 664 So.2d 882 (Ala.1995); In re T.P., 475 N.E.2d 312, 315 (Ind.1985); In re Doe, 126 N.C.App. 401, 485 S.E.2d 354, 358 (1997); In re Doe, 19 S.W.3d 249, 255-57 (Tex.2000); In re Doe, 19 S.W.3d 346, 360 (Tex.2000). However, to impose such detailed standards from this Court for every future case is to layer the law as to make it more difficult for a chancellor to freely decide the issue.
¶ 17. Giving weight to the fact that the judge below saw and heard the two witnesses, we independently conclude that the minor has failed to demonstrate that she is mature and well-informed enough to make the abortion decision on her own, nor has she proven that termination of the pregnancy would be in her best interest. Finding that the chancellor thoughtfully considered the evidence before him and correctly decided the case in denying the abortion, we should not second guess his decision or add verbiage to it.
¶ 18. The record reflects that R.B. was not aware of the medical risks associated with the abortion, the danger to subsequent pregnancies, or the possibility of future infertility. She knew neither the name, the background nor the qualifications of the physician who was to be performing the abortion. She was unaware that medical assistance benefits may be available for prenatal care, childbirth, and neonatal care. She was also unaware of services offered by public and private agencies such as pregnancy prevention counseling. Further, there was testimony from R.B.’s grandmother indicating R.B.’s emotional fragility, and the possible ramifications an abortion might have on her mental well-being.
¶ 19. R.B. has failed to persuade us that she is mature enough to handle the decision on her own. The record does not indicate that the minor is capable of reasoned decision-making and that she has considered her various options. Rather, the evidence shows that R.B.’s decision is the product of impulse.

*835
CONCLUSION

¶ 20. The chancellor did not abuse his discretion, and his ruling is upheld. Based on these reasons, we affirm the judgment of the chancery court.
¶ 21. AFFIRMED.
PITTMAN, C.J., MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. EASLEY, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY WALLER AND COBB, JJ. BANKS, P.J. DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.