809 So.2d 748 (2002)
Naomi TUTOR, Appellant,
v.
Bobby PANNELL, Edward L. Medders and Wife, Martha J. Medders, Appellees.
No. 2000-CA-01488-COA.
Court of Appeals of Mississippi.
February 26, 2002.
*749 Michael N. Watts, Oxford, J. Mark Shelton, Tupelo, Walter Alan Davis, Oxford, Attorneys for Appellant.
Bradford L. Henry, Phillip L. Tutor, Pontotoc, Attorneys for Appellees.
Before SOUTHWICK, P.J., IRVING, and MYERS, JJ.
IRVING, J., for the Court.
¶ 1. Naomi Tutor appeals from a judgment rendered by the Chancery Court of Pontotoc County which purported to settle a boundary line dispute in favor of appellees, Bobby Pannell, Edward Medders and Edward's wife, Martha. Tutor asserts six issues for review which are: (1) whether the chancellor made any final determination with regard to the property lines in this case, (2) whether the chancellor's decision in this matter is self-contradictory, (3) whether the chancellor improperly considered evidence not presented at the trial of this matter, (4) whether the chancellor manifestly erred by finding that the "Pannell" deed controlled over the "Tutor" deed, (5) whether the chancellor's finding regarding the north property line of the "Medders" property is supported by substantial evidence, and (6) whether the chancellor was in manifest error in determining that the appellant, Ms. Tutor, did not acquire any property in this matter by adverse possession. We find merit in issues one, two, four and five; therefore, we reverse and remand.

FACTS
¶ 2. This case involves a boundary line dispute between adjacent property owners in northern Pontotoc County, Mississippi. Bobby Pannell, Edward Medders and Edward's wife, Martha, filed a complaint seeking to quiet title to their respective tracts of property against Naomi Tutor. Tutor counterclaimed on the same ground, along with other claims not at issue. The dispute centers primarily around the western boundary line of the Medderses' property in relationship to Tutor's property and the northern and western boundary line of Pannell's property in relationship to Tutor's property. Tutor owns approximately 60.87 acres that adjoin Pannell's tract to the north and west. The Medderses own a 1.24 acre tract to the south of Pannell's land which adjoins Tutor's property on the Medderses' west property line. A fence runs along the north boundary line of the Pannell tract, and the conflict revolves *750 around the fence. In addition, a field road runs south of the fence.
¶ 3. During the hearing before the chancellor, several lay and two expert witnesses gave testimony. The lay witnesses were Jack Savely, tax assessor for Pontotoc County, Mike Sappington, Tutor, Tutor's son, Rex, Pannell, and Edward Medders. The two expert witnesses, James Akins and Rex Smith, are both surveyors who surveyed the disputed areas. Both of these surveys were admitted into evidence. The Akins survey was offered by Pannell and the Medderses, and the Smith survey was offered by Tutor. According to the Akins survey, the fence diagonally crossed the actual boundary line. On the other hand, according to Smith's survey, the boundary line was south of the fence.
¶ 4. Sappington, the grandson of the predecessors in title to Bobby Pannell, testified that the Pannell and Tutor properties were sold from his grandmother's estate. More importantly, his parents once resided on the Pannell property when Tutor's husband was alive. Sappington testified that his family claimed property to the width of the field road.
¶ 5. Medders testified that he had observed Tutor's lessee using the field road for ingress, egress and has witnessed the lessee performing work on the road. Medders also testified that he was purchasing Pannell's property and that he was told by a realtor that the property line extended to the fence. Yet, Medders stated that he did not know if the realtor had the property surveyed.
¶ 6. Pannell and Savely testified that Pannell's and the Medderses' tracts included the fence. Savely also testified that the tax apportionment for Pannell's and the Medderses' tracts extended to the fence.
¶ 7. Tutor testified that she did not know where the lines were, that she had never told anyone to get off her land, that she had used the field road for twenty-one years and that she had never mowed or bush-hogged the property. Furthermore, Tutor testified that the fence had been built in 1987. Rex Tutor testified that his father built the fence. He also testified that his family's property included the field road. Rex explained that, when the fence was built, his father had to leave the space for the field road in order to access the Tutor property.
¶ 8. After Pannell and the Medderses rested their case, the chancellor stated in the presence of both attorneys, "The Court will hold this in abeyance until I have a deraignment of title and.... I would ask both lawyers to present any finding of fact and conclusions of law that they would like for me to consider in making my decision." Both attorneys agreed. At some later point, the attorney for Pannell/Medders presented the chancellor with a deraignment of title.
¶ 9. Following the submission of the deraignment of title, the chancellor issued a memorandum opinion and judgment wherein she found that neither Tutor nor Pannell had adversely possessed the property which encompasses the field road because neither could satisfy the six elements necessary to claim adverse possession. Absent adverse possession, the court concluded that the northern boundary of the Pannell tract was established by the Akins survey because it was the most credible. Additionally, the chancellor found the factual dispute regarding the western boundary line of Pannell's and the Medderses' properties to be insignificant. The reason for this was Tutor's failure to offer any evidence which would indicate that the fence which runs north and south along the western boundary of the Pannell's and Medderses' tracts is not the boundary line. Consequently, *751 the chancellor found that the western boundary line of Pannell's and the Medderses' tracts was the fence line as it existed the day of the trial. Thus, title as to both the northern boundary and western boundary was quieted in favor of Pannell and the Medderses. Tutor's other claims were dismissed.
¶ 10. Tutor filed a motion to reconsider. The chancellor denied the motion but modified her previous findings as follows:
[T]he Court does not find the survey of James Akins, Rex Smith or Dean McCrae[1] to conclusively establish the boundary lines at issue. Any language in the original Memorandum Opinion and Judgment to the contrary is hereby set aside. Rather than solving the issue, however, this only makes it harder to the extent that there now exists an overlap of the boundaries between the two tracts of property. Therefore, this Court must determine which party actually owns the property contained in the overlap.
The chancellor then determined that the Pannell and Medders tracts were deeded from a common source prior in time to the conveyance of the Tutor tract, and therefore, the earlier deeds took precedence in determining the property lines in issue.

ANALYSIS OF ISSUES PRESENTED

1. Determination of the Property Lines and Evidence in Support Thereof
¶ 11. Issues one, two, four and five are interrelated. Therefore, for purposes of discussion and resolution, we have collapsed these three issues into this reformulated heading. As a result of our decision to reverse and remand, issue three is moot; therefore, we will not address it beyond our brief discussion in footnote two. However, before we embark upon our discussion, we resort to our standard of review which is a limited one. In the Matter of R.B., A Minor, by and through Her Next Friend, V.D. v. State of Mississippi, 790 So.2d 830 (¶ 10) (Miss.2001). The findings of a chancellor are upheld unless those findings are clearly erroneous. Id. at (¶ 11). If substantial evidence exists to support the chancellor's findings of fact, broad discretion is afforded her determination. Id. A finding of fact is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." Id.
¶ 12. Tutor contends that the chancellor never made a determination as to the actual boundaries, as established by an actual survey, of the properties in this dispute. Tutor further contends that the chancellor merely made a legal determination that, to the extent that Pannell's, the Medderses' and Tutor's deeds conflicted, the Pannell's and Medderses' deeds control over Tutor's deed. On the other hand, Pannell and the Medderses argue that the court clearly established the northern boundary by accepting the credibility of the Akins survey; therefore, they argue that the chancellor made a final determination regarding the property lines in this case. They also argue that the Akins survey accurately describes the Pannell tract which includes the alleged overlap; therefore, the chancellor held that the Pannell and Medderses tracts were entitled to the overlap which is described in the Akins survey. In addition, they argue that both the "Memorandum Opinion and Judgment" and the "Order *752 Denying Motion to Reconsider" should be read together in order to find consistency.
¶ 13. In the order denying Tutor's motion to reconsider, the chancellor states, "As set forth in the original Memorandum Opinion and Judgment but clarified herein, the Court cannot but conclude the rightful owners of the property contained within the overlap are the Plaintiff." The disputed property claimed by Pannell and the Medderses was surveyed by Akins using the deeds of their respective properties. The property lines for Pannell's and the Medderses' property, as established by the Akins survey, were in accord with the property lines claimed by Pannell and the Medderses. Therefore, the chancellor determined that the rightful owners of the property claimed by the Pannell/Medders were Pannell and the Medderses. However, as will be discussed later, this determination, unanchored by a survey, could not settle the issue as to the physical existence of the boundary lines.
¶ 14. As already observed, the chancellor concluded that the rightful owners of the property contained within the overlap were Pannell and the Medderses because their title preceded Tutor's title. She based this conclusion on her analysis of the deraignments of title[2] which, in her opinion, clearly established that both tracts were once contained within a single tract and that the Pannell/Medders tracts were conveyed prior in time to appellant's tract.
¶ 15. For two reasons, this Court is perplexed by the chancellor's deductions. First, after careful examination of the deraignments of title, this Court is unable to determine if the tracts in question derived from a common tract. If the tracts in question did not derive from a common tract of land, any one deed fails to control any other deed. Secondly, even if the chancellor's discernment of the deraignments of title is superior to ours, without an acceptable survey establishing boundary lines on the ground, this Court is unable to agree that the northern boundary line has been established. The deeds, without a supporting survey, fail to establish a northern boundary line. As previously noted, the chancellor found that neither of the surveys conclusively established the boundary lines at issue. We reverse and remand in order for the lower court to establish conclusively the northern boundary line.
¶ 16. As to the western boundary lines, the chancellor found, as we have already pointed out, the factual dispute to be insignificant regarding these because, according to the chancellor, Tutor failed to offer any evidence which would indicate that the fence which runs north and south along the western boundary of Pannell's and the Medderses' tracts is not the boundary line. In other words, the chancellor perceived the western lines of the properties to be clear and not subject to significant factual dispute. Yet, the chancellor failed to make a final legal description of the western property lines because she rejected all surveys which would have established the lines. We reverse and remand for the chancellor to make a determination as to the legal description of the western property lines.

2. Establishment of Ownership by Adverse Possession
¶ 17. Tutor contends that the chancellor erred in concluding that she *753 failed to carry her burden of proof as to her adverse possession claim. Tutor argues that the only evidence of other use is the gratuitous mowing of grass by Pannell who always believed the property belonged to Tutor. In addition, Tutor points out that the property inside her fence was only used by her and her tenants. Thus, she contends that all property within her fence should have been determined hers by adverse possession.
¶ 18. On the other hand, Pannell and the Medderses admit that Tutor and her tenants used the field road. However, they assert that Tutor failed to use the field road exclusively.
¶ 19. The chancellor found that Tutor had not adversely possessed the property lying between the fence and the field road. The chancellor found that the element of exclusivity was not shown because other persons utilized the "field road" area. Again, the problem with the chancellor's finding is that, in the absence of an acceptable survey specifying the boundaries of the disputed areas, it is impossible to determine what areas are claimed to have been adversely possessed.
¶ 20. We note that, according to the Akins survey, which the chancellor found to be more credible, the fence runs across the northern boundary of Pannell's tract in a southwesterly to northeasterly direction and crisscrosses the northern boundary of the Pannell tract at approximate midpoint. This placement of the fence results in approximately eighteen feet of the Pannell tract on the southwestern end of the tract being located north (or inside) of the fence. We agree with Tutor that there is absolutely no evidence that belies her claim of adverse possession to the area within the fence. Therefore, we also reverse and remand on this issue for further consideration by the chancellor.
¶ 21. In summary, we reverse and remand this case to the trial court with directions to make a determination regarding an acceptable survey and to adjudicate the related issues, including adverse possession, after that has been done.
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF PONTOTOC COUNTY IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, LEE, and MYERS, JJ., concur. THOMAS, CHANDLER and BRANTLEY, JJ., not participating.
NOTES
[1] The McCrae survey was ordered by the court, and although the chancellor referred to the Dean McCrae survey, our examination of the record reveals that the survey was never admitted into evidence.
[2] Tudor contends that the chancellor erroneously relied on the deraignments of title because they were submitted after the trial, not during the trial. We find no merit in this contention. As previously noted, at the end of Pannell's and the Medderses' case, the chancellor clearly advised both parties that she would hold her decision in abeyance until she had received a deraignment of title. There was no objection from any of the parties.