United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 11, 2004**

Charles R. Fulbruge III
Clerk

REVISED DECEMBER 8, 2004

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-60278

DARLEEN JACOBS LEVY,

Plaintiff-Counter-Defendant-Appellee,

versus

CARL MCGILL AND MCGILL WELLWORKS, INC.,

Defendants-Counter-Claimants-Appellants.

--------------------
Appeal from the United States District Court
for the Southern District of Mississippi
(01-CV-68)
--------------------

Before WIENER and PRADO, Circuit Judges, and KINKEADE,[*] District
Judge.

PER CURIAM:[**]

Defendants-appellants Carl McGill and McGill Wellworks, Inc.
(collectively, "the McGills") appeal the district court's denial of
their motion for summary judgment as to whether Hibernia National
Bank ("Hibernia") acquired title to a note and deed of trust
encumbering real property in Mississippi by virtue of an assignment
from the Federal Deposit Insurance Corporation ("FDIC") and then

---

[*] District Judge for the Northern District of Texas, sitting
by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

conducted a valid foreclosure sale to pass title to plaintiff-appellee Darleen Jacobs Levy ("Levy"). The McGills also appeal the district court's order, following a bench trial, that quieted Levy's title to the property based on a determination that they had failed to establish continuous adverse possession of 62 lots for ten years. We affirm the district court on both counts.

## I.  FACTS AND PROCEEDINGS

Over a period of years, Carl McGill and his former wife, Mary McGill, acquired title to 82 lots in the Dolan's Race Track Addition subdivision in Gulfport, Mississippi. In June 1987, Carl and Mary encumbered the property to secure a loan from the First National Bank of Slidell, Louisiana ("First National"), executing a Deed of Trust to E.C. Stuart, Jr., Trustee.

First National subsequently went into receivership, and the FDIC succeeded to its interest in Carl and Mary's note and Deed of Trust by operation of law.[3] After obtaining authority from the United States District Court for the Eastern District of Louisiana, the FDIC sold First National's assets, including Carl and Mary's note and Deed of Trust, to Hibernia under an Asset Purchase Agreement ("APA"). In August 1989, Hibernia executed a Notice of Substitution of Trustee for the Deed of Trust and appointed Robert L. Genin, Jr. as substitute trustee.

---

[3] See 12 U.S.C. § 1821(d)(2)(A)(i).

2

In October 1989, Carl and Mary transferred their interest in the lots to McGill Wellworks, Inc., a Mississippi corporation. Carl and Mary McGill subsequently defaulted on the loan secured by the property.[4]  After publication and posting of a substituted trustee's notice of sale, Genin held a foreclosure sale on May 1, 1990 and conveyed the property to Hibernia.

After the foreclosure sale, the McGills continued to use the property and the improvements on it as they had done before the foreclosure sale.  During 1990 and 1991, Carl McGill, his sister-in-law, Tammy McGill, or both, had several encounters with representatives of Hibernia during which they were ejected by the McGills from what they believed to be their rightful property.  In May 1992, Hibernia sold the property at auction to Levy for $8,800.

In July 2000, Levy filed a Complaint for Damages and to Quiet Title against the McGills in the United States District Court for the Eastern District of Louisiana.  Levy sought to confirm and quiet her title to the 82 lots that she had acquired from Hibernia. Levy also sought to recover revenue that the McGills had collected on the property over the years.

The United States District Court for the Eastern District of Louisiana transferred the case to the United States District Court for the Southern District of Mississippi.[5]  The McGills filed a

---

[4] In 1989, Mary separated from Carl and later divorced him.

[5] Hereafter, all references to the "district court" are to the United States District Court for the Southern District of

3

counterclaim in the district court setting forth five counts: (1) confirmation of title by adverse possession; (2) removal of title clouds created by Levy's complaint; (3) confirmation of title and removal of clouds as to lots that Levy did not claim; (4) confirmation of title to a prescriptive easement; and (5) declaratory judgment that Levy did not have title to the property because her predecessor-in-title, Hibernia, acquired its title by a defective Substituted Trustee's Deed.[6]

In October 2001, the district court entered an Agreed Order that dismissed with prejudice "all claims for monetary damages" between the McGills and Levy. The Agreed Order also dismissed without prejudice all claims "relating to surveys, boundary lines and physical location of the subject real property . . . ."

Both parties then moved for summary judgment on two issues: (1) whether Hibernia's foreclosure on the McGills' Deed of Trust was valid; and (2) whether the McGills adversely possessed 62 of the 82 lots for a continuous period of ten years. In January 2002, the district court found that no genuine issue of material fact existed as to the validity of the foreclosure sale and granted summary judgment in favor of Levy on this issue. As the McGills claimed title to only 62 of the 82 lots, the district court's grant

Mississippi.

[6] As the McGills do not argue counts three and four on appeal, they are abandoned. See Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 533 (5th Cir. 1996) (citing Randall v. Chevron U.S.A., Inc., 13 F.3d 888, 911 (5th Cir. 1994)).

4

of summary judgment in favor of Levy quieted her title as to the 20 uncontested lots. The district court also ruled that genuine issues of material fact existed with regard to the adverse possession issue and thus denied both parties' motions on that claim.

After a bench trial on the issue of adverse possession only, the court entered a final judgment that cleared Levy's title to the remaining 62 lots. The district court determined that Levy's suit had not tolled the McGills' alleged period of adverse possession until February 2001, when the District Court for the Eastern District of Louisiana transferred it to the Southern District of Mississippi.[7] As such, the McGills needed to establish commencement of any alleged period of adverse possession by March 1991, ten years before the transfer to the Mississippi district court. The district court ruled that the McGills had failed to prove commencement of a period of adverse possession by March 1991 by making a positive assertion of a right hostile to the record title owner. In the alternative, the district court concluded that the McGills had interrupted any period of adverse possession that

---

[7] The filing of a suit to contest the adverse possessor's possession interrupts the ten-year period. See Trotter v. Roper, 92 So. 2d 230, 232 (Miss. 1957). The question whether the district court correctly determined that Levy's suit did not toll the ten-year period until its transfer to the Mississippi district court is not before us for review; neither would the answer to that question affect the outcome of this action.

might have been established when they acknowledged Hibernia's and Levy's title to the foreclosed lots.  This appeal ensued.

## II.  ANALYSIS

### A.  Summary Judgment

#### 1.   Standard of Review

We review a district court's grant or denial of summary judgment <u>de novo</u> and use the same standard as that applied by the district court.[8]   Summary judgment is "proper, if, viewing the evidence and inferences drawn from that evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving part is entitled to judgment as a matter of law."[9]   At this stage, "a court may not weigh the evidence or evaluate the credibility of witnesses, and all justifiable inferences will be made in the non-moving party's favor."[10]

#### 2.   Discussion

The McGills raise several arguments with regard to the district court's denial of their motion for summary judgment on the issue of the validity of the foreclosure sale.  The McGills first

---

[8] <u>United States ex. rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.</u>, – F.3d —, 2004 WL 1959083, at *2 (5th Cir. Sept. 21, 2004).

[9] <u>Id.</u> (citing FED. R. CIV. PROC. 56(c); <u>Daniels v. City of Arlington</u>, 246 F.3d 500, 502 (5th Cir. 2001)).

[10] <u>Id.</u> (citing <u>Morris v. Covan World Wide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998)).

argue that Hibernia never acquired title to the property from the FDIC because the FDIC's assignment to Hibernia was invalid. To support this proposition, the McGills argue that the district court erred when it admitted the APA between Hibernia and the FDIC as evidence that the FDIC assigned the Deed of Trust to Hibernia. The McGills also argue that the district court erred when it concluded that the APA was a valid assignment to Hibernia because (1) it lacked definiteness; (2) Levy failed to prove that the FDIC delivered the assignment to Hibernia; and (3) Hibernia did not record the assignment.

The McGills objected to the admissibility of the APA on hearsay grounds. We review a district court's ruling on admissibility of evidence for abuse of discretion.[11] The district court did not abuse its discretion here. The McGills' objection to the APA as hearsay is meritless.[12]

A thorough review of the record reveals no reversible error in the district court's conclusion that the APA operated as a valid assignment to Hibernia of the McGills' note and Deed of Trust. The

---

[11] See United States v. Pace, 10 F.3d 1106, 1115 (5th Cir. 1993).

[12] See, e.g., Kepner-Tregoe, Inc. v. Leadership Software, Inc., 12 F.3d 527, 540 (5th Cir. 1994) ("'Signed instruments such as wills, contracts, and promissory notes are writings that have independent legal significance, and are nonhearsay.' . . . The admission of a contract to prove the operative fact of the contract's existence thus cannot be the subject of a valid hearsay objection. To introduce a contract, a party need only authenticate it.").

7

McGills cite to Mississippi Code Annotated §§ 15-3-1(c) as support for the proposition that the APA was not sufficiently definite to convey the Deed of Trust to Hibernia.[13]  The McGills also cite Mississippi Code Annotated 89-1-3 as support for the proposition that the FDIC had to deliver the Deed of Trust to Hibernia.[14]  As the district court noted, the language of these statutes indicates that neither explicitly pertains to the assignment or transfer of a security interest.  Indeed, Section 15-3-1(c) mentions nothing on "definiteness."  The McGills cite to no other authority to support these arguments.

Neither do the McGills cite to any applicable authority to support their argument that the parties had to record the assignment.[15]  Although the McGills cite to Mississippi Code Annotated § 89-5-29 as support for this proposition, we conclude that the district court did not err when it found that the language

---

[13] "An action shall not be brought whereby to charge a defendant or other party . . . upon any contract for the sale of lands . . . unless, in each of said cases, the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or signed by some person by him or her thereunto lawfully authorized in writing."  MISS. CODE ANN. § 15-3-1(C).

[14] "An estate of inheritance or freehold, or for a term of more than one year, in lands shall not be conveyed from one to another unless the conveyance be declared by writing signed and delivered."  MISS. CODE ANN. § 89-1-3.

[15] See Scruggs v. Northern, 85 So. 89, 91 (Miss. 1920) (noting that the failure to record the assignment of a note secured by a deed of trust does not affect the validity of the assignee's substitution of trustee).

of Section 89-5-29 requires that a party record only mortgage and deed of trust documents themselves or documents that evidence a substitution of trustee.[16]

The McGills also contend that the foreclosure sale itself was invalid. To support this argument, the McGills argue that the Substitution of Trustee instrument and the notice of the foreclosure sale did not meet the requirements of Mississippi law, because they did not (1) show how Hibernia acquired the benefit of the Deed of Trust and (2) properly name the original beneficiary of the Deed of Trust, First National.

Under Mississippi law, a foreclosure sale is presumed valid.[17] The burden of proving invalidity is on the party who seeks to set aside the foreclosure sale.[18]  To meet this burden, the party attacking the validity of the sale must prove that the trustee failed "to perform a necessary condition precedent to the valid exercise of [the trustee's] power of sale or there must exist an

---

[16] "Except as hereinafter provided, all mortgages and deeds of trust upon land given to secure the payment of money, and all instruments of writing whereby a trustee is substituted under any such deed of trust, and all instruments of writing canceling or satisfying, or authorizing the cancellation or satisfaction of any such mortgage or deed of trust, shall be recorded separately from other instruments relating to land or records, and such records shall be called 'records of mortgages and deeds of trust on land.'" MISS. CODE ANN. § 89-5-29.

[17] See Myles v. Cox, 217 So. 2d 31, 34 (Miss. 1968).

[18] See id.

inadequate consideration plus inequitable circumstances."[19]  As the McGills do not allege that there existed "inadequate consideration," they must prove that the trustee failed to satisfy a condition precedent to his power of sale.

We perceive no error in the district court's conclusion that the notice and advertisement of the foreclosure sale met the requirements of Mississippi law.  Like the district court, we have found no law that requires a substitution of trustee instrument to demonstrate —— in detail —— how the secured party obtained its interest.  There is no dispute that the parties properly recorded the Substitution of Trustee instrument here; neither do the parties dispute that the Deed of Trust allows the legal holder to appoint a substitute trustee.  The Substitution of Trustee instrument clearly stated that Hibernia was the holder of the McGills' note and Deed of Trust.  In addition, the instrument stated that the then-current holder of the note and Deed of Trust was "Hibernia National Bank, formerly First National Bank of Slidell, Louisiana."[20]  In sum, we conclude that the district court did not err when it granted summary judgment in favor of Levy and against the McGills on the validity of the foreclosure sale.

## B.    Bench trial

### 1.    Standard of Review

---

[19] Id.

[20] Record on Appeal 3:424.

10

We review bench trial findings of fact for clear error and conclusions of law de novo.[21]

## 2. Discussion

As for the 62 lots to which they claim ownership under adverse possession, the McGills argue on appeal that the district court erred when it held that they failed to prove a hostile claim of ownership for an uninterrupted period of ten years. To establish a claim of adverse possession under Mississippi law, the claimant has the burden of showing that his possession was (1) under a claim of ownership; (2) continuous and uninterrupted; (3) hostile — as opposed to amicable and permissive — possession; (4) open, notorious, and visible; (5) peaceful; and (6) exclusive.[22] The claimant must establish, by clear and convincing evidence, each of these elements for a period of ten years.[23] The parties dispute only three of these elements: (1) claim of ownership; (2) hostile possession; and (3) continuous and uninterrupted possession.

The district court ruled that the McGills failed to prove by clear and convincing evidence that they made a positive assertion of a right hostile to Hibernia's or Levy's title sufficient to

---

[21] Adams v. Unione Mediterranea di Sicurita, 364 F.3d 646, 655 (5th Cir. 2004) (quoting Baldwin v. Stalder, 137 F.3d 836, 839 (5th Cir. 1998)).

[22] See Martin v. Simmons, 571 So. 2d 254, 257 (Miss. 1990); Cheatham v. Stokes, 760 So. 2d 795, 799 (Miss. Ct. App. 2000).

[23] See MISS. CODE ANN. § 15-1-13(1); Rice v. Pritchard, 611 So. 2d 869, 871 (Miss. 1992).

11

overcome the presumption that a mortgagor who holds property after a foreclosure sale is in permissive, as opposed to hostile, possession.[24] The district court also ruled that the McGills fatally interrupted any period of hostile possession that they may have begun when they acknowledged that Hibernia — and then Levy — held title to the property.

After a careful consideration of the entire record and the law applicable here, we can discern no error in the district court's holding.[25] We are satisfied that the district court did not err in holding that the McGills interrupted any alleged period of adverse

---

[24] See, e.g., St. Regis Pulp & Paper Corp. v. Floyd, 238 So. 2d 740, 744 (Miss. 1970) ("Such permissive possession of lands, even if long continued, does not confer title in the person in permissive possession until a positive assertion of a right hostile to the owner has been made known to him. The Mississippi courts have held that a tenant at sufferance may not set up a hostile claim of adverse possession based simply upon possession."). Further, the Mississippi Supreme Court has held that

> [t]o acquire title by possession two things must occur, to-wit, an occupation, actual or constructive, and a claim of ownership. Neither is effectual without the other. No continuance of occupation, no matter how long protracted, will avail unless accompanied by claim of title; and every presumption of law is that the occupant holds in subordination and not adversely, to the true owner.

Newman v. Smith, 84 So. 2d 512, 515 (Miss. 1956) (emphasis added).

[25] Because we find dispositive the district court's determination that the McGills interrupted any alleged period of adverse possession, we need not reach the issue whether a district court — under Mississippi law — can determine an adverse possession claim when it has not determined the boundaries to the property. See Tutor v. Pannell, 809 So. 2d 748 (Miss. Ct. App. 2002) (reversing chancery court's ruling on adverse possession because chancery court made no determination as to boundaries of property).

12

possession when Carl McGill acknowledged Hibernia's title to the foreclosed lots during his encounter with the Hibernia representatives and when McGill Wellworks's lawyer acknowledged Levy's title to the same property. Any acknowledgment by an adverse possessor that the record owner of real property has title is inconsistent with a claim of adverse possession.[26] The transcript of the January 10, 1992 videotaped encounter between Carl McGill and the Hibernia representative reveals that Carl repeatedly acknowledged Hibernia's title to the foreclosed lots. Further, in March 1994, David Oliver, attorney for McGill Wellworks, wrote a letter to Levy in which he acknowledged that Levy had acquired the foreclosed lots from Hibernia.[27] The district court did not err in this regard.

### III. CONCLUSION

For the foregoing reasons, the judgments of the district are, in all respects,

AFFIRMED.

---

[26] Ford v. Rhymes, 103 So. 2d 363, 364 (Miss. 1958).

[27] The letter informed Levy that "[t]his office has been consulted by Dolan Trailer Park, a/k/a McGill Wellworks, Inc. concerning perhaps unbeknownst to you a possible boundary dispute which concerns the property which you have acquired from Hibernia Bank." Record on Appeal 3:513 (emphasis added).