569 So.2d 1139 (1990)
Gene D. HOLLIMAN and Patricia H. Holliman
v.
CHARLES L. CHERRY & ASSOCIATES, INC., et al.
No. 07-CA-58867.
Supreme Court of Mississippi.
April 11, 1990.
Rehearing Denied November 7, 1990.
*1140 David B. Gross, Linda Thompson Greaves, Jackson, for appellants.
Michael P. Mills, Navarro Mills & Davis, Aberdeen, for appellees.
Before DAN M. LEE, P.J., and SULLIVAN and BLASS, JJ.
DAN M. LEE, Presiding Justice, for the Court:
The operator of a dually completed oil and gas well could not determine the ownership of funds attributable to a wild tract of land of approximately six acres that was included in the oil and gas producing units. The operator, Charles L. Cherry and Associates, Inc. (plaintiff below, but not a party to this appeal), brought this interpleader suit naming two (2) primary sets of claimants, the Hollimans, Gene D. Holliman and wife Patricia Hankins Holliman (one set of defendants below and appellants here), and the Dales, Clarence N. Dale, Jr., his wife, Barbara C. Dale, Ellis S. Dale, his wife, Wilsye Anne Dale and Rebie S. Dale, Clarence's and Ellis' mother (the other primary set of defendants below, and appellees here), as parties defendant.
The Hollimans and the Dales engaged in a great deal of pre-trial pleading and discovery which resulted in an agreed order limiting the trial of the case to the issues between the Hollimans and the Dales. Issues between the successful set of claimants to the property and funds attributable thereto and the plaintiff interpleader, Cherry, were to be decided at a subsequent trial.
The Hollimans asked for a reformation of the description in the deed under which they claimed title to describe specifically the tract in litigation and alternatively argued *1141 they had acquired title by over ten years of adverse possession.
The Dales claimed the lands had been in their family chain of title since 1910, and they subsequently inherited the lands from Clarence N. Dale, Sr., who died intestate in 1975.
The entire record made on the trial of the case consists of the testimony of one witness, Gene D. Holliman, and copies of three instruments offered as exhibits to his testimony.
At the conclusion of Mr. Holliman's testimony, the Dales moved for a directed verdict against the Hollimans, and the chancery judge sustained the motion. A final decree was entered dismissing the Hollimans' claims to the six-acre tract and vesting title to the tract in the Dales. A copy of the decree was ordered to be entered in the land records of Monroe County, Mississippi, as a muniment of title into the Dales. From that decision and decree the Hollimans have appealed and present the following assignment of error:
Whether the judgment of the trial court should be reversed when the court found for a claimant/defendant in an interpleader suit who on the trial of the case put on no evidence of any kind, whose allegations in the pleadings were all denied, and where the opposing claimant/defendant testified as to negotiations for the purchase of the tract in question which caused him to believe that he acquired title to the tract by deed and who also testified to seventeen years of adverse possession consistent with the type possession permitted by the wild nature and characteristics of the tract.
Stated differently, one party puts on no evidence. The opposing party puts on substantial evidence. Should the party putting on no evidence be permitted to win?
Appellee Dales note that the Hollimans frame their issues on criticism of the lack of proof propounded by the Dales in the trial of this action. The Dales assert that in reality, the Hollimans admit in their pleadings that the appellees, Clarence N. Dale, Jr.; Ellis S. Dale; and Mrs. Rebie S. Dale constitute all of the lawful heirs of Clarence N. Dale, Sr. Since the Dales claim their title by intestate succession as admitted by the Hollimans the burden was on the Hollimans to cast out the Dales by proof of adverse possession or by reforming their deed. Therefore, the Dales claim and we agree that the issue herenow on appeal can be more succinctly stated as follows:

Did the Hollimans put on sufficient proof to establish title to the Monroe County lands by adverse possession or by reformation of deed?

STATEMENT OF THE FACTS
This appeal involves ownership of a tract of land of six acres, more or less, lying north and west of the Buttahatchie River, which is the boundary between Monroe and Lowndes Counties, Mississippi. This river meanders along the southern boundary of Monroe County without regard to governmental section lines or other man-made points of reference. The tract in controversy lies in the northwest corner of the Southwest Quarter of Section 7, Township 16 South, Range 17 West, and is situated in Monroe County, Mississippi. The major portion of the Southwest Quarter of said Section 7, however, comprising 154 acres, more or less, lies in Lowndes County, Mississippi. There is also a small tract of 0.90 acres, more or less, lying in the old Buttahatchie River bed and adjacent to the six-acre tract in controversy, which was originally a part of this litigation but which is not a part of this appeal.
All of the Southwest Quarter of Section 7, T16S-R17W is covered by a dually completed oil and gas well known as the Charles L. Cherry and Associates  G.D. Holliman 7-11, Well No. 1 permitted in Monroe and Lowndes Counties.
All claimants to the conflict acreage base their claims on a common source. A patent covering all of the SW/4 of Sec. 7 was issued by the United States of America to Silas Kolb on May 19, 1824.
*1142 Through mesne conveyances, J.A. Dale became record owner of the W/2 of the SW/4 of Sec. 7 on November 21, 1910. S.M. Dale and C.N. Dale, Sr. acquired all of the W/2 of the SW/4 on December 14, 1935. C.N. Dale, Sr. acquired the full interest in the W/2 of the SW/4 on December 27, 1944.
C.N. Dale, Sr. held record title to all of the W/2 of the SW/4, including both the Monroe and Lowndes County portions, until the mid 1960's. He conveyed by warranty deed all of the W/2 of the SW/4 to his two sons, Clarence N. Dale, Jr. and Ellis S. Dale, and their wives on March 3, 1966. This warranty deed made no distinction between those lands lying north and west of the River and that part of the W/2 of the SW/4 lying south of the River.
By Correction Warranty Deeds dated March 25, 1966 and March 17, 1967, C.N. Dale, Sr. conveyed only that part of the W/2 of the SW/4 lying south of the Buttahatchie River to his sons and their spouses.
Gene Holliman had apparently been renting at least the lands lying south of the Buttahatchie River from C.N. Dale, Sr. for several years and in 1967, entered into negotiations with C.N. Dale, Sr. to purchase the land. The Hollimans paid the agreed purchase price to C.N. Dale, Sr., who several months later brought them a deed that had been executed  not by Dale, Sr., but  by C.N. Dale, Jr. and Ellis S. Dale and their wives. Evidently, the Hollimans were not aware that the record title owners at the time they were negotiating with Dale, Sr. were actually his two sons and their wives.
Nevertheless, the warranty deed delivered to the Hollimans, as stated above, executed by Clarence N. Dale, Jr. and Ellis S. Dale, and their spouses, was dated March 21, 1967, and conveyed all of the W/2 of the SW/4 lying south of the Buttahatchie River to Gene Douglas Holliman and Patricia H. Holliman.
The ownership of the six acres was not disputed during the lifetime of C.N. Dale, Sr. On June 12, 1975, Dale, Sr. died leaving as his sole heirs at law his widow, Mrs. Rebie S. Dale, and two sons, Clarence N. Dale, Jr., and Ellis S. Dale. A few short years after Dale, Sr.'s death, the dispute began to reach fruition. On November 10, 1978, the Hollimans executed an oil, gas and mineral lease between themselves, as lessor, and Edward A. Benefield, as lessee. The lease covered "[a]ll that part of the SW/4 that lies south of Buttahatchie River, less Bethlehem Church tract. Containing 150 acres, more or less, being subject to survey."
After the discovery of oil and gas in and around the latter part of 1981 or the early part of 1982, the disputed ± 6 acres were placed into production units and the feud began as to its ownership. As previously stated, the Hollimans argue that Dale, Sr. intended to convey the ± 6 acres to them (Dale, Sr., did not own the lands conveyed in the 1967 deed, having previously conveyed it to his two sons and their spouses on March 3, 1966. He apparently negotiated the deal for the benefit of his two sons) and therefore it was a mistake to limit the description to only that acreage located south of the River.
Alternatively, the Hollimans argue they have acquired the title by adverse possession having possessed the land for more than the required 10 year prescriptive period. The Dale heirs counter that they inherited the lands from C.N. Dale, Sr., who died intestate in 1975.
Also, as previously mentioned, the entire record made on the trial of the case consists of the testimony of one witness, Gene D. Holliman, and copies of three (3) instruments offered as exhibits to his testimony. Holliman testified only to a limited extent as to the facts associated with his understanding, which led him to believe that he owned the tract in litigation. Early in the trial, Chancellor Bost ruled that the language of the deed in which the Hollimans bought land from the Dales was clear and unambiguous. Therefore, the deed spoke for itself and Holliman was not allowed to testify as to Dale, Sr.'s intent during negotiations, this being parole evidence and inadmissible.
Holliman testified as to the wild nature and characteristics of the tract in question *1143 concluding that the only use the land had was "[j]ust to hold the world together. It's not good for anything." On cross-examination, Holliman testified he first went on the property "[j]ust a year or two after I bought it. I looked at the timber on it." Later in the trial, however, he testified on re-direct examination that he first learned that the ± six acres was located in Monroe County "[r]ight after I bought it" when "Mr. Cliff Arnold took me over there and showed me." Further evidence established that the six-acre tract is not suitable for raising crops or grazing cattle. The land is not suitable for a permanent structure to be erected on it. The timber growing on the land was sold by Holliman to a timberman but was not worth going in after. The only access to the land from the rest of the SW/4 of said Sec. 7 is by boat across the Buttahatchie River. Holliman testified that he thought he was paying taxes on the tract north of the river when he paid his taxes in Lowndes County. He went on the tract a number of times, but claimed there was no way he could remember exact dates. In short, the Hollimans contend that from 1967 until the present, they have claimed the tract of land as their own and have used it to its fullest and best use adversely as to the entire world.
On the trial of the case, none of the Dales testified nor were any instruments introduced into evidence on their behalf. Nevertheless, the Dales agree in their pleadings and appeal brief that the lands lying north and west of the River are wild lands. They note, however, that the Hollimans have never posted these lands, nor have they ever farmed the lands. The Hollimans never stated to the Dales, prior to the lawsuit that they claimed the ± six acres in Monroe County. The Hollimans have never paid taxes on the property. The Hollimans admit no intent to wrongfully dispossess anyone of the ± six acres. The Hollimans never cut timber off the lands. Finally, the Dales assert that the Hollimans have never recorded any deed, lease, mortgage or other instrument of record describing the ± six acres in Monroe County.

I. OPINION
First, we note that prior to trial, the following facts had already been agreed upon by the Hollimans and the Dales:
1) That C.N. Dale, Sr., acquired title to all of the west half of the southwest quarter of Section 7, Township 16 South, Range 17 West in 1944.
2) That C.N. Dale, Sr., conveyed all of these lands to his sons and their wives on March 3, 1966.
3) That C.N. Dale, Sr., executed correction deeds to his sons and their wives on March 25, 1966, and March 17, 1967, and that these correction deeds conveyed only those lands lying south of the river in Lowndes County.

4) That C.N. Dale, Jr., and Ellis S. Dale and their wives conveyed only the lands lying south of the river to the Hollimans on March 21, 1967.
5) That C.N. Dale, Sr., died intestate on June 12, 1975.
6) That the sole heirs at law of C.N. Dale, Sr., are Clarence N. Dale, Jr., Ellis S. Dale, and Mrs. Rebie S. Dale.
Therefore, we find there is no merit to the Hollimans' claim that "there is no chain of title to the subject tract in Monroe County and that there is a `county problem.'" The record reveals that the original warranty deed from the Kolb family to J.A. Dale and S.M. Dale, dated November 21, 1910, described the entirety of the Southwest Quarter of Section 7 and some land in Section 18, both in Township 16 South, Range 17 West, Lowndes County, Mississippi, but it does not mention that any part of the southwest half of the land is in Monroe County. All subsequent deeds pertinent to this chain of title used this same description. The record further reveals that the Buttahatchie River crosses through the Southwest Quarter of Section 7. The Buttahatchie River is the pertinent boundary between Lowndes and Monroe Counties. See Miss. Code Ann. § 19-1-95 (1972). Thus, the subject tract, i.e., that part of the Southwest Quarter lying north and west of the Buttahatchie River, is actually located in Monroe County.
*1144 Nevertheless, where, as here, land is described by township, range and section, so that it may be located with absolute certainty, it is of no importance whatsoever to the validity of the conveyance that the lands or a portion thereof are recited as lying in an incorrect county. See Morrison v. Casey, 82 Miss. 522, 34 So. 145 (1903) (a deed to the West Half of the Southeast Quarter of a certain section of land, describing it as lying in Issaquena County, conveyed title to the entire land, though seven acres thereof were situated in Sharkey County; the mention of Issaquena County did not limit the operation of the deeds to land in that county).
Consequently, the above facts were sufficient to show title to the ± six acres, located north and west of the Buttahatchie River, Monroe County, into the Dales subject to ouster of their claim by the Hollimans at trial. Being an interpleader action, the question becomes whether the Dales were required to put on any proof of these facts.
Appellants (the Hollimans) attempt to convince this Court that by accepting the interpled funds, the chancellor assumes the position of the interpleader and should consider the claims and the evidence of all the defendants and then decide which has the better claim. The claimants/defendants should all stand on the same footing in the eyes of the chancery court. The first claimant to put on evidence, as did the Hollimans in the case sub judice does not become a "plaintiff" with a burden of proof different from that of the other defendants, the Dales in the case sub judice. Finally, appellant argues that the unpredictable order of the presentation of the claims does not govern the outcome of the case; each of the claimants must offer evidence to support his claim. Under the facts of this case, this argument is meritless and we offer the following analysis in support of our holding.

A.

Which Party had the Burden of Proof?
Prior to trial co-defendants, the Hollimans; co-defendants, the Dales; and plaintiff, Charles L. Cherry and Associates, Inc., entered into an Agreed Order Limiting Issues for Trial which stated in pertinent part that
The Court shall rule as to which party, either the claimants Dale or the claimants Holliman, hold title to that part of the Southwest Quarter of Section 7, Township 16 South, Range 17 West in Monroe County, lying north and west of the Buttahatchie River.
It seems clear to us that at this stage of the proceedings, the case resembled any other civil case and that the Hollimans, who sought to oust the Dales from their record title ownership, were thrust in the role of plaintiff and the Dales played the role of defendant.
As this Court has previously stated, "[t]he burden of proof is upon the party trying to establish mutual mistake and the proof must establish such a mistake beyond a reasonable doubt." Perrien v. Mapp, 374 So.2d 794, 796 (Miss. 1979); Turner v. Turner, 241 Miss. 444, 130 So.2d 871 (1961). See, also, Wall v. Wall, 177 Miss. 743, 171 So. 675 (1937).
Therefore, it is apparent to us that the Hollimans had the initial burden to go forward with their evidence. They further bore the risk of non-persuasion on their claim.

B.

Whether the Trial Court Erred by Not Reforming the Deed into the Hollimans to Include Specifically the Six-Acre Tract North and West of the River?
Unfortunately for the Hollimans, they offered no proof of "mutual mistake" between themselves and C.N. Dale, Jr., E.S. Dale and their respective wives, all of whom were the signatory parties to that certain 1967 warranty deed which the Hollimans seek to reform. Instead, the Hollimans attempted to testify to certain alleged oral negotiations between themselves and C.N. Dale, Sr. (now deceased), in which Dale, Sr. supposedly communicated his intention to include the disputed six acres in the sale of land to the Hollimans in 1967. This was clearly parol evidence and the *1145 question is whether the chancellor erred in failing to allow such evidence to prove mutual mistake, and, if said ruling was error, was it reversible error?

C.

What is the Standard of Review for a Chancellor's Decree?
When presented with what is essentially a question of law, the familiar manifest error/substantial evidence rules have no application to our appellate review of such questions. The principle of "manifest error" applies only to a factual situation. If the chancellor is manifestly wrong in basing his decision upon the facts, then this Court will reverse; otherwise, we will affirm. This rule does not apply on questions of law. Planters Bank & Trust Company v. Sklar, 555 So.2d 1024, 1028 (Miss. 1990); Boggs v. Eaton, 379 So.2d 520, 522 (Miss. 1980); Mississippi State Highway Commission v. Dixie Contractors, Inc., 375 So.2d 1202, 1206 (Miss. 1979); S & A Realty Co. v. Hilburn, 249 So.2d 379, 382 (Miss. 1971); see also, Pullman-Standard, a Division of Pullman, Inc. v. Swint, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66, 79 (1982).
With regard to a pure question of law, this Court shall conduct a de novo review.

1. Is it the Law in Mississippi that "Until an Ambiguity is Proved on the Face of the Deed, the Deed Speaks for Itself?"
The Hollimans contend the Chancellor erred by adopting the position that "before he is able to reform a deed, he must first find that an ambiguity exists on the face of the deed."
BY THE COURT (speaking to the Dales' attorney): So it is your contention that regardless of what the understanding or representation may have been, unless the deed itself reflects an ambiguity?
BY MR. MILLS: Yes, your Honor. And we have authority for that fact ... regardless of the attempt to put on proof, intent, or what other understandings and negotiations were, until an ambiguity is proved on the face of the deed, the deed speaks for itself.
The Hollimans assert the court erroneously agreed with counsel for the Dales, quoting the chancellor, as follows:
It appears in the instant case that the language of the deed is clear and is unambiguous.
It is, therefore, my opinion from all of the cases cited and read, that those which are most applicable to the question before the court suggest that the objection of Mr. Mills [to the parol evidence regarding negotiations with Clarence Dale, Sr. and mutual mistake] is well taken: that it should be, and hereby is sustained.
The Hollimans attack this reasoning and suggest that under the court's ruling, a pure typographical error such as printing in Range 17 West instead of Range 16 West would result in an attempt to convey lands six miles away, but because there were no "ambiguity on the face of the deed," the court would be powerless to reform the instrument.
We agree with the Hollimans and believe the chancellor erroneously analyzed this critical question of law. That is, there are exceptions to every rule and the present case is an "exception" type case. Evidence the holding in the case of Mississippi State Highway Commission v. Cohn, 217 So.2d 528 (Miss. 1969), which reads as follows:
By numerous decisions of this Court the prior negotiations of parties become merged in the contract of conveyance when it is executed. West v. Arrington, 183 So.2d 824 (Miss. 1966); Brown v. King, 214 Miss. 437, 58 So.2d 922 (1952); and State Highway Department v. Duckworth, 178 Miss. 35, 172 So. 148 (1937). In the absence of fraud or mutual mistake, and none is here alleged, parol evidence directed to the prior oral representations could not have been introduced at the trial to vary the terms of the deed by the plaintiffs to the defendant.
Id. at 531 (Emphasis added). Obviously, this stated rule implies that if mutual mistake or fraud is properly pled, then prior *1146 oral representations/negotiations are admissible to prove the real intent of the contracting parties.
One of the two (2) exceptions to the general rule expressed in Cohn, supra, having been pled by the Hollimans, i.e., mutual mistake; it was error, therefore, for the trial judge to disallow the requested parol evidence. Having made this finding, we now turn to the question of whether this was reversible error.

2. Was the Trial Judge's Error in Refusing to Allow Parol Evidence Reversible?
We begin our analysis by looking at the offer of proof made by the Hollimans immediately after the chancellor ruled prior negotiations would be inadmissible; that is, what were the facts that the Hollimans would attempt to prove in support of their claim to reform the deed? Essentially, these alleged facts would have been as follows:
1) That the Hollimans negotiated only with C.N. Dale, Sr., to purchase the property.
2) That C.N. Dale, Sr., assured them that they were getting all of the land which he owned.
3) That they paid the money to Mr. Dale in 1966, a year before they received their deed.
Had this proffer been accepted as proven, it is insufficient in our opinion to support a decree for reformation. As previously stated, the Hollimans offered no proof of a mutual mistake between themselves and C.N. Dale, Jr., et al., who were the signatory parties of the deed which the Hollimans seek to reform.
Therefore, it follows in this Court's mind that the outcome of the case would not have been different, even with the parol evidence; thus, the error was harmless and non-reversible, since the proffer did not touch on whether a mutual mistake was made between the Hollimans, as buyers, and C.N. Dale, Jr., et al., as sellers and signatory parties to the 1967 warranty deed which the Hollimans seek to reform. This contention lacks merit; therefore, we address the Hollimans' alternative claim of adverse possession.

D.

Whether the Hollimans Made Out a Prima Facie Case of Acquisition of Title by Adverse Possession?
We agree with the Hollimans' contention that the character of the land determines the type possession necessary to acquire title by adverse possession. In Broadus v. Hickman, 210 Miss. 885, 50 So.2d 717 (1951), the rule is stated as follows:
Again, it is the rule that less notorious and obvious acts upon the land are essential to vest title in what are known as wild lands than lands suitable to occupancy by residing thereon and putting them to husbandry and farming. McCaughn v. Young, 85 Miss. 277, 37 So. 839, 842 (1905).
The Court continued:
The facts in no two cases are exactly the same. Each must stand upon its own facts; therefore, we deem it unnecessary to detail the various facts involved in the many cases in this State which have involved this question.
These early cases were reaffirmed in Davis v. Clement, 468 So.2d 58 (Miss. 1985), in which this Court held:
The rule is well settled that both the quality and quantity of possessory acts necessary to establish a claim under § 15-1-23 may vary with the characteristics of the land. In the case of "wild" or unimproved lands, adverse possession may well be established by evidence of acts that would be wholly insufficient in the case of improved or developed lands. Kayser v. Dixon, 309 So.2d 526, 529 (Miss. 1975; McCaughn v. Young, 85 Miss. 277, 292-93, 37 So. 839, 842 (1904).
Id. at 62.
The land involved in the case sub judice is wild swampland, described by Gene Holliman as "not good for anything" except "just to hold the world together." However, the record testimony reveals that, at best, Mr. Holliman walked on the land "several times." No other *1147 proof of possession was produced. No surveys were run. No posted signs were put up. No fences were constructed. No timber was cut, even though a man named "Brock" allegedly bought the timber on the land, but did not go to get the timber, describing it as not "fit to cut." No taxes were paid on the property by the Hollimans, even though Mr. Holliman testified that he learned the land was in Monroe County "[r]ight after I bought it." No written documents were ever filed of record describing the six acres North of the River. Here, we are faced with a finding by the learned chancellor and our manifest error/substantial evidence rule.
We are of the opinion that this is simply insufficient evidence of even a prima facie case of adverse possession, and we hold that appellants' claim of adverse possession is meritless.
On appeal from chancery court, this Court must respect the chancellor's findings of fact which are supported by credible evidence and are not manifestly wrong. Ainsworth v. Callon Petroleum Company, 521 So.2d 1272, 1274 (Miss. 1988); Mitchell v. Rawls, 493 So.2d 361, 362-64 (Miss. 1986); Bryant v. Cameron, 473 So.2d 174 (Miss. 1985), and progeny. In finality, after the Hollimans concluded their case-in-chief, the Dales moved for a directed verdict which the chancellor granted.

Conclusion
The Hollimans failed to present any evidence with regard to a mutual mistake between themselves and those parties who actually sold them the acreage South of the Buttahatchie River, i.e., Dale, Jr., et al. In addition, the Hollimans failed to present sufficient evidence of even a prima facie case of adverse possession. It follows that we are bound by the learned chancellor's finding of insufficient evidence of adverse possession and dismissal of the Hollimans' claim of ownership. Id.
Accordingly, the order of the Chancery Court of Monroe County, Mississippi, in this case, dated August 19, 1987, be and it is hereby affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.