956 So.2d 1066 (2007)
Timothy MILLIGAN, Individually and as an Heir of the Estate of Jackie R. Milligan, Appellant,
v.
Mary V. MILLIGAN, Individually and as Trustee of the Jackie R. Milligan Testamentary Trust and Milligan's Ready Mix, Inc. and Kelly Kirk Milligan, Appellees.
No. 2005-CA-01413-COA.
Court of Appeals of Mississippi.
May 15, 2007.
*1068 Brian H. Neely, Tupelo, attorney for appellant.
Michael Dale Cooke, Iuka, attorney for appellees.
Before MYERS, P.J., IRVING and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Timothy Milligan appeals the judgment of the Chancery Court of Tishomingo County which ruled in favor of defendants Milligan's Ready Mix, Inc., and Kelly Kirk Milligan. Timothy argues the trial court erred in the following: its dismissing his claim of partial ownership of the "family" *1069 business of Milligan's Ready Mix, Inc.[1] and the real property upon which the business is located; failing to determine the type of business entity MRM operated as at the time of his father's death; and granting summary judgment regarding his right to damages. Finding no error, we affirm.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. MRM is a concrete mixing and form business located in Iuka, Mississippi. The business has been in the Milligan family for several decades. This dispute began over MRM's storing its large concrete products on a portion of a tract of property devised to Timothy in 1995 by his father, Jackie Milligan. Pursuant to Jackie's will, Timothy's step-mother, Mary Milligan, held the tract of land in trust for Timothy until he reached the age of fifty. An initial complaint was filed by Timothy in July of 2001 against Mary Milligan, individually and as trustee of Jackie's estate, and Milligan's Ready Mix, Inc. Timothy complained of storage by MRM of large concrete products on approximately a one-half acre portion of his property. Timothy also complained of the encroachment onto his property of a metal building owned by MRM. Timothy ultimately filed a second amended complaint in June of 2004, expanding his claims to include a one-half ownership interest in MRM's property and business. Additionally, he added another defendant, his uncle, Kelly Kirk Milligan, who currently operates the business.
¶ 3. Because the business's chain of title is in dispute, the history of the business must be explained from its inception. "Milligan's Ready Mix"[2] was founded around 1958 by Timothy's grandfather, Kell Milligan, as a sole proprietorship. At that time, Kell bought the property of the business's present location in Tishomingo County. In the 1960s the business continued to develop under Kell and his two sons, Jackie and Kelly, as a family business. It is undisputed that in 1979, Kell, via warranty deed, conveyed the property upon which MRM is located to his sons Jackie and Kelly.
¶ 4. The current dispute centers around three instruments: a warranty deed, a deed of trust, and a promissory note. The warranty deed conveyed the MRM real property from Kelly and Jackie to "Milligan Brothers Ready Mix, Inc." on November 1, 1986. However, at this time, while there was evidence submitted to the court that "Milligan's Brothers Ready Mix, Inc." operated as a corporation, the business was not incorporated at the Mississippi Secretary of State's office until May 23, 1988, when the business entity "Milligan's Ready Mix, Inc." was incorporated. In sum, Timothy claims that because "Milligan Brothers Ready Mix, Inc." was not officially incorporated at the time the warranty deed was executed, or in fact at any time,[3] the 1986 warranty deed is invalid, and thus Jackie never sold his one-half *1070 interest in the property. Upon Jackie's death, Timothy claims he was entitled to a one-half interest in the real property and proceeds from the business.
¶ 5. Pertinent documents submitted into evidence included a deed of trust, also signed on November 1, 1986, from "Milligan Brothers Ready Mix, Inc." to Jackie to secure payment of $82,500 at the rate of eight percent per annum for Jackie's interest in the MRM real property. The deed of trust stated "Milligan's Brothers Ready Mix, Inc." was to pay Jackie $10,000 per year for fourteen years. Further, a promissory note dated October 31, 1986, granted Jackie $82,500 from "Milligan Brothers Ready Mix, Inc.," under the same terms as the deed of trust. Kelly Milligan and Ann Harwell, Kelly's sister, signed the note respectively as president and secretary/treasurer of Milligan Brothers Ready Mix, Inc.[4]
¶ 6. In July of 1995, Jackie Mulligan passed away, leaving a will which devised most of his estate to his wife, Mary, and son, Timothy. Timothy was bequeathed the parcel of land adjacent to the Milligan's Ready Mix business by his father. Jackie had purchased this property from T.B. Woodruff in 1971; it is adjacent to but not a part of the MRM property. Pursuant to Jackie's will, the Woodruff property was held in trust for Timothy, with Timothy's step-mother, Mary, serving as trustee until Timothy reached the age of fifty, at which point all proceeds of the trust would be his.[5] Also, upon Jackie's death, Timothy moved into a home on this property. Large concrete products were stored by MRM on a portion of this property since the 1980s, because of space constraints on the ready-mix property, but with Jackie's permission. Additionally, the metal building, constructed in the early 1970s, was also partially on the MRM property and partially on Timothy's property by agreement of Jackie.
¶ 7. Regarding the ready mix business, Jackie's will only mentioned the following: "I give and bequeath to my son Timothy . . . the balance of the proceeds due me from a note receivable from Milligan Brothers Ready Mix, Inc." No mention was made in the will regarding Jackie's retaining any ownership interest in the ready mix business. At trial, receipts were entered into evidence showing that after Jackie died, "Milligan's Ready Mix, Inc." properly began paying Timothy $10,000 per year commencing in 1995, concluding with a "paid in full" receipt on August 2000. Total funds paid to Timothy after his father's death were $60,169.28.[6]
¶ 8. As previously stated, this dispute first began in July 2001 as an apparent attempt by Timothy to rid his property of the large concrete products stored for several years by MRM and to receive compensation for the encroachment of the metal building on his property. In his first complaint, Timothy also complained that Mary had refused to stop the uncompensated use and damage to his property and was thus negligent as trustee of his property. In response to this complaint, Milligan's Ready Mix, Inc. and Kelly made a counterclaim seeking Timothy's parcel of land by adverse possession, noting the concrete products and metal garage had been *1071 on this property for over ten years. Timothy, however, did not sue for partial ownership of the ready mix business until his second amended complaint of June 2004, filed by new counsel. In the revised complaint, he sought one-half of the assets of "Milligan's Ready Mix, Inc.," $2 million in damages for his deprivation of interest in the business, $2,000 per month for compensation of the use of his property, or alternatively an order directing Milligan's Ready Mix, Inc. to remove the materials from his land, and compensation for any damage to his property. In response, Milligan's Ready Mix, Inc. and Kelly renewed their adverse possession counterclaim.
¶ 9. In January 2005, defendants Milligan's Ready Mix, Inc. and Kelly filed a motion for partial summary judgment which was granted in part. The chancellor stated there was no genuine issue of material fact for the following claims: $2 million in damages or for any other amount against Milligan's Ready Mix, Inc. and Kelly, $2,000 per month rent on the disputed property, and any damages to Timothy's property by MRM or Kelly. The chancellor excepted, however, any potential claim to damages of Timothy's property by the adverse use by Milligan's Ready Mix, Inc. The chancellor denied summary judgment for two claims: Timothy's claim to one-half of the assets of Milligan's Ready Mix, Inc. and the defendants' counterclaim of adverse possession on the portion of the metal building that allegedly encroached on Timothy's property.
¶ 10. A bench trial occurred on May 9, 2005, before the Chancery Court of Tishomingo County. The remaining two claims were heard on the merits. Timothy called two witnesses during his case-in-chief: Kelly as an adverse witness and Mary Milligan. Timothy then rested. Next, the chancellor granted defendant Mary's oral motion for an involuntary dismissal against her as trustee. The remaining two defendants then moved for an involuntary dismissal regarding Timothy's claim to one-half interest in Milligan's Ready Mix, Inc., which the chancellor granted. Thus the only remaining claim for adjudication was the defendants' adverse possession counterclaim against Timothy. After hearing testimony, the chancellor dismissed the adverse possession claim. On June 14, 2005, a final order was entered whereby Milligan's Ready Mix, Inc. was ordered to remove all of its personalty from the disputed property within ninety days. Timothy timely appealed to this Court, challenging the judgment in favor of Milligan's Ready Mix, Inc. and Kelly Kirk Milligan.[7]

STANDARD OF REVIEW
¶ 11. "The sufficiency of the evidence is determined by the chancellor, who sits as finder of fact and makes determinations as to the weight and credibility of the evidence." Peters v. Peters, 906 So.2d 64, 68(¶ 12) (Miss.Ct.App.2004). Our standard of review is a limited one for a chancellor's findings of fact. This Court will not disturb a chancellor's findings unless clearly erroneous, manifestly wrong, or an erroneous legal standard was applied. Sanderson v. Sanderson, 824 So.2d 623, 625-26(¶ 8) (Miss.2002). A finding of fact is considered clearly erroneous when, even though there is evidence to support the finding, the reviewing court has a firm belief a mistake has been made. Tutor v. Pannell, 809 So.2d 748, 751(¶ 11) (Miss.Ct. App.2002). However, if a chancellor's findings of fact are supported by substantial *1072 evidence, broad discretion is given to support her determination. Id.

ANALYSIS
¶ 12. Timothy raises ten issues in his brief. For discussion purposes, we will combine related issues.
1. Whether the trial court erred in granting the Defendants' motion for involuntary dismissal of Timothy's claim to partial ownership of Milligan's Ready Mix, Inc. or Milligan's Brothers Ready Mix, Inc. and the real property upon which it is situated.
¶ 13. In his brief, Timothy raises two related issues separately: his claim to a partial ownership of MRM (formerly Milligan Brother's Ready Mix and now Milligan's Ready Mix, Inc.) and his claim to partial ownership of the real property upon which MRM is situated. For discussion purposes, we shall combine these two issues. These issues were determined at the conclusion of Timothy's case-in-chief when the chancellor granted the defendants' motion for an involuntary dismissal of Timothy's claim for one-half interest in MRM. We find proper the trial court's determination that Timothy did not have an interest in MRM's assets or real property.
¶ 14. Involuntary dismissals are rightly granted during a non-jury trial pursuant to Mississippi Rules of Civil Procedure 41(b) at the close of the plaintiff's case-in-chief for failure to show a right to relief. Glover v. Jackson State Univ., 755 So.2d 395, 404(¶ 23) (Miss.2000). When considering a motion to dismiss, the chancellor should review the evidence fairly, and not in the light most favorable to the plaintiff, which is the applicable standard for a motion for a directed verdict. Century 21 Deep South Properties, Ltd. v. Corson, 612 So.2d 359, 369 (Miss.1992). "The result is that the ruling [for an involuntary dismissal] is practically equivalent to a finding of fact." Ainsworth v. Callon Petroleum Co., 521 So.2d 1272, 1274 (Miss. 1987). Therefore, the standard of review for a motion to dismiss under Rule 41(b) is one of substantial evidence and manifest error. Stewart v. Merchants Nat'l Bank, 700 So.2d 255, 259 (Miss.1997).
¶ 15. Timothy argues that the chancery court made insufficient findings of fact upon which to base its involuntary dismissal, and thus the trial court erred. However, "[g]enerally, when there are no specific findings of fact, this Court will assume that the trial court made determinations of fact sufficient to support its judgment." Century 21, 612 So.2d at 367. When the chancellor does not provide specific findings of fact, our Court must "look to the evidence and see what state of facts will justify" her ruling. Id. (citations omitted). We disagree with Timothy's assertion that the factual findings of the trial court were insufficient to adjudicate the ownership issue. The lack of evidence presented by Timothy during the bench trial to prove his right to relief justifies the dismissal.
¶ 16. Initially, the chancellor denied the defendants' motion for summary judgment on this issue. Because our standard of review is one of substantial evidence and/or manifest error, we do not need to consider all of the evidence before the chancellor in support of her ruling of involuntary dismissal during trial. We will, however, briefly recapitulate the uncontroverted evidence before the court which justified the chancellor's ruling.
¶ 17. The following facts are not in dispute. In 1979, Kell conveyed MRM's property to Jackie and Kelly. On November 1, 1986, Kelly and Jackie conveyed the *1073 property on which the business is located to "Milligan Brothers Ready Mix, Inc." Kelly testified via deposition that he and his brother ran the business as a partnership, but there was no partnership agreement. On October 31, 1986, a promissory note was entered into by Kelly and Ann Milligan, as president and secretary/treasurer, respectively, of "Milligan's Brothers Ready Mix, Inc.," for $82,500 at eight percent interest to be paid to Jackie Milligan over the next fourteen years at $10,000 per year payments. Also, a deed of trust was entered into by the same parties, with the same terms, for the MRM property. Pursuant to his father's will, from 1995 until 2000 Timothy accepted a total of $60,169.28 payments, as seen on six receipts for payment from Milligan Brothers Ready Mix, Inc. to Timothy. Although not incorporated at the Secretary of State's office, Milligan Brothers Ready Mix, Inc. filed corporate United States and Mississippi state tax returns from 1980 until approximately 1986, according to depositions and exhibits of tax documents. In his deposition, the business's former certified public accountant, David Nichols, testified he treated Milligan's Brothers Ready Mix, Inc. as a corporation for tax purposes until 1987, at which time "Jackie left the corporation." In 1988 documentation attests a corporation named "Milligan's Ready Mix, Inc." filed articles of incorporation in Mississippi. Finally, after Jackie's death, Timothy also signed a waiver of process and entry of appearance regarding his father's will stating in effect the closing of the estate was correct.
¶ 18. Importantly, Timothy acknowledges in a deposition that he could produce no witnesses or documents which would establish that Jackie owned a one-half interest in the business at the time of his death. Timothy also explained that the reason he initiated this action was because the annual payments of $10,000 from MRM suddenly stopped in 2000, and he was under the impression these payments were disbursements for his father's ongoing share of the business profits. Further, he stated in a deposition that he felt as Jackie's heir that he was due part of the $500,000 reported every year on MRM's tax returns. Yet, Timothy had no documents or witnesses to substantiate this claim.
¶ 19. At the bench trial, Timothy rested without putting forth any further evidence to prove his claim of a one-half ownership interest in the business. In fact Kelly, testifying as an adverse witness for Timothy, stated that Jackie had "sold out" his interest in the business in 1986. In response, Timothy provided no evidence to disprove this statement.
¶ 20. Kelly stated that once Kell sold the business to his two sons, Kelly and Jackie, it was run like a partnership with all profits and losses split fifty-fifty. However, Kelly was under the impression that while he and Jackie were running the business it was already incorporated. Kelly testified that they "filed everything as a corporation, but it wasn't incorporated until after Jackie got out of it." Kelly testified that when he found out the business was not incorporated he properly filed articles of incorporation for "Milligan's Ready Mix, Inc." at the Secretary of State's office in May of 1988, which was after the November 1, 1986 warranty deed purportedly conveying the property and interest from Jackie and Kelly to "Milligan's Brothers Ready Mix, Inc."
¶ 21. In his brief, Timothy insists that after his father died, Jackie's estate retained a one-half interest in the business. However, again, Timothy did not present the chancery court with any proof to support his contention that the ownership interest in the business was never sold by *1074 Jackie. He merely provided evidence that at one time Jackie did possess some interest in the business as a partial owner with Kelly. There was no evidence present in the record proving Jackie died with any interest in the business, regardless of its legal status.
¶ 22. In their brief, the Appellees contend that Milligan Brothers Ready Mix, Inc. was a de facto corporation and thus had the legal ability to acquire ownership interest and title to property. Therefore, they argue, the transfer of interest from Jackie to that entity in 1986 was valid. A de facto corporation "is an association which actually exists for all practical purposes as a corporate body, but which, because of failure to comply with some provision of the law has no legal right to corporate existence as against a direct attack by the state." Allen v. Thompson, 248 Miss. 544, 559-60, 158 So.2d 503, 509-10 (1963) (quoting 18 C.J.S., Corporations § 93). A de facto corporation exists when there is "(1) a valid law under which a corporation with the powers assumed might be incorporated; (2) a bona fide attempt to organize a corporation under such law; and (3) an actual exercise of corporate powers." Id. at 561, 158 So.2d 503 (quoting 13 Am.Jur., Corporations, § 49, 195). The effect of de facto corporate status is that the entity "may be ousted in a direct proceeding brought by the state for that purpose . . . but with a few exceptions . . . it has a corporate existence . . . against individuals and other corporations. . . ." Id. at 559-60, 158 So.2d 503 (quoting 18 C.J.S., Corporations § 93).
¶ 23. While the chancellor declined to make a finding of fact that the ready-mix business was a de facto corporation at the time Jackie sold his interest in the property in 1986, we find this analysis furthers her ruling that Timothy retained no ownership interest to MRM, and it invalidates Timothy's contention that there was no existing corporation to take title to MRM's property. Examining the record, we find Timothy failed to make a case for relief regarding his claim for any ownership interest in the business or its property. Timothy has been paid for Jackie's sale of his interest in the business. Whether or not Jackie sold his interest in MRM is an issue of fact which the chancery court already ruled upon in the affirmative. After applying the proper standard of deference to the trial court, and carefully examining the record, we find the chancellor's decision was based on substantial evidence and was not clearly erroneous. Thus the trial court did not err in issuing an involuntary dismissal in favor of the defendants regarding whether Timothy was a partial owner of the business or real property upon which MRM is situated. Accordingly, this issue is without merit.
2. Whether the trial court erred in failing to determine the legal status of the ready-mix business at the time of Jackie Milligan's death.
¶ 24. Timothy raises several issues regarding the legal status of the ready-mix business, which we shall combine for our discussion purposes. Timothy contends that the trial court erred in failing to determine if the business was a sole proprietorship, partnership, or corporation. Timothy argues that since the court did not determine what type of legal status the ready-mix business held, it was impossible for the trial court to determine who owned the business and its assets.
¶ 25. The Appellees argue that this and related issues are improper because they were not raised initially before the trial court. Burns v. Haynes, 913 So.2d 424, 428(¶ 18) (Miss.2005) (citing Mack v. State, 784 So.2d 976, *1075 978(¶ 10)(Miss.Ct.App.2001)). We agree. However, we will discuss the issue on the merits since it is related to the involuntary dismissal of the ownership issue.
¶ 26. The chancellor found, in her order denying defendants' summary judgment regarding Timothy's partial ownership, that the business had operated in at least four different forms over the years: "as a sole proprietorship owned by Kell Milligan, as a jointly-owned venture in some form owned by Kelly Kirk Milligan and Jackie Milligan, as Milligan Brothers Ready Mix, Inc., and as Milligan Ready Mix, Inc." The court went on to state "the points of transition of the business from one of the foregoing forms to the other [are] unclear. One item of significance which remains unanswered is the point at which the assets of Milligan Brothers Ready Mix, Inc. became the assets of Milligan Ready Mix, Inc." Further, the court acknowledges "the cloud of doubt that looms over the history of the business' ownership and structure, [is] likely due in large measure to its being operated by a handful of family members over the years who did not anticipate litigation such as this."
¶ 27. The crux of Timothy's argument is that since the warranty deed of November 1986 conveyed property to an entity that "did not exist," the deed is void. However, neither at trial nor in his brief does Timothy cite any case law to support this statement. Factually, Timothy contends the corporation did not exist because "Milligan's Brother's Ready Mix, Inc." had not been officially incorporated at the Secretary of State's office. He stated the entity functioned as a "sham corporation" because it was a "family business." Yet, the court noted otherwise in its order regarding defendants' motion for partial summary judgment, stating "[t]he Court finds that no reasonable person would conclude that there is an inconsistency between describing a business as a corporation and referring to it as a `family business.' Indeed, it is not unusual for a `family business' to function as a close corporation, which is a valid business form."
¶ 28. We find the trial court did not err in adjudicating the matter of Timothy's potential ownership without determining the exact legal status of the business. According to our deferential standard of review, we are to assume the trial court made determinations of fact sufficient to support its ruling. Century 21, 612 So.2d at 369. Timothy failed to establish a prima facie case for his claim to ownership. The court found the business was valid and not a "sham corporation." In his brief, Timothy quotes Gulf Land & Dev. v. McRaney, 197 So.2d 212, 217 (Miss.1967) (quoting Allen v. Thompson, 248 Miss. 544, 158 So.2d 503 (1963)) regarding de facto corporations, without elaborating. As discussed supra, Milligan's Brothers Ready Mix, Inc. did share many of the characteristics of a de facto corporation. Yet, the trial court found it unnecessary to identify the exact legal nature of the business, and we do not find this in error. If Timothy had been able to provide some evidence to prove his ownership claim, it may have been necessary for the chancellor to determine specifically what type of business MRM was at the time of Jackie's death. However, as was the case, the "cloud of doubt" regarding the family business's ownership and structure was not lifted because of the failure of Timothy to state a claim for relief. This issue is without merit.
3. Whether the trial court erred in failing to determine what interest Jackie had in MRM at the time of his death.
¶ 29. Relatedly, Timothy asserts the chancellor is in error for failing to *1076 specify Jackie's ownership interest in MRM at the time of his death. Again, the Appellees argue that this issue is improper because it was not raised before the trial court. Burns, 913 So.2d at 428(¶ 19). We agree.
¶ 30. Indisputably, Timothy did not present any evidence contradicting the defendants' claim that Jackie did not retain any ownership interest, because of the warranty deed of 1986 and various witness's testimony that he sold it, nor does he put forward an argument in his brief to support his contention. Because Timothy failed to present evidence for his prima facie case for ownership interest in MRM before the trial court, this issue is moot. Additionally, we find there was substantial evidence for the chancellor to find Jackie did not retain an ownership interest in the property, and it was unnecessary for her to adjudicate the issue at bar. Accordingly, this issue is without merit.
4. Whether the trial court erred in failing to determine a chain of title to the land upon which MRM is situated.
¶ 31. The Appellees note this issue was not raised below and is thus improper for appeal. Burns, 913 So.2d at 428(¶ 18). Again, we agree. Furthermore, we find this issue moot because the chancellor found Timothy did not retain any ownership interest in the real property MRM is situated upon. Finally, Timothy does not present an argument in support of this specific issue in his brief.
¶ 32. If we address this issue on the merits, Timothy argues that the trial court "completely ignored" the chain of title regarding ownership to the real property. However, after making this bold assertion  basing his prima facie case upon the warranty deed which gave title from Kell to Jackie and Kelly  once again, Timothy fails to offer any documentation in support thereof, and simply claims there is "not even an iota of evidence to dispute" Timothy's uncontroverted chain of title.[8] Presumably in support of his position, Timothy cites Holliman v. Charles L. Cherry and Assoc., Inc., 569 So.2d 1139 (Miss. 1990). We find Holliman analogous to the case at bar. That court found there was insufficient proof to establish the plaintiff's prima facie claim for adverse possession based upon the chancellor's findings of fact. Id. at 1147. Procedurally similar to our case, the chancellor granted defendant-title holder's motion for a directed verdict after the plaintiff's case-in-chief, based on insufficient evidence. Id. at 1141. Holliman states "[t]he burden of proof is upon the party trying to establish mutual mistake and the proof must establish such a mistake beyond a reasonable doubt." Id. at 1144. Although dealing with adverse possession, this case is instructive regarding Timothy's burden of proof, which he failed to meet for a claim to MRM's property. We cannot find the trial court erred in declining to adjudicate this issue. Accordingly, this issue is without merit.
5. Whether the trial court erred in granting summary judgment in favor of Milligan Ready Mix, Inc. and Kelly regarding Timothy's right to damages.
¶ 33. The chancellor granted the defendants' motion for summary judgment regarding Timothy's claim to damages. In his second amended complaint, Timothy sought $2 million in damages, or any other amount; $2,000 per month for compensation by MRM for his property's use; and *1077 recovery for damage to his property. The trial court did except from summary judgment Timothy's possible recovery for damages arising from MRM's use of his property by adverse possession at that time.
¶ 34. In reviewing a trial court's grant of summary judgment, our standard of review is de novo. Harrison v. Chandler-Sampson, Ins., Inc. 891 So.2d 224, 228(¶ 11) (Miss.2005). Thus this Court will review all evidence contained in the record in the light most favorable to the non-moving party. Id. Summary judgment is granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). The party opposing the motion "may not rest upon the mere allegations or denials of his pleadings" but instead must respond by setting forth specific facts showing there is a genuine issue of material fact for trial. M.R.C.P. 56(e); Miller v. Meeks, 762 So.2d 302, 304(¶ 3) (Miss.2000). If an issue of fact is found, the trial court shall deny summary judgment; otherwise, the motion is affirmed. Id.
¶ 35. After carefully examining the record, we find no evidence to substantiate Timothy's claims to either $2 million in damages or $2,000 per month in rent for the use of his property by MRM. As the trial court notes in its order, in Timothy's depositions he gives a vague rationale for these two figures. During his examination by defense counsel, when asked "Why do you think you're entitled to $2 million against Milligan's Ready Mix?" Timothy responds, "Because they've not given me  they've not given me nothing, but what I thought was for that year, no money for  you know, it stopped that." When asked how he arrived at the figure of $2,000 a month, Timothy cryptically responded, "I thought, well, they're trying to screw me and the people of the United States, then I think that's a good deal. I think that that's a reasonable price from  since they've stopped paying what I thought was  not promotions, but since they've stopped paying the $10,000 a year, which I thought was from  not gross income, but Jackie's part of the ready mix. . . ." In another deposition, in reference to his damage claims, Timothy responded that he did not have any documents or witnesses to substantiate his claims to damages. Finally, in Timothy's response to defendants' motion for partial summary judgment, he states, regarding compensation, that "tax documents will show that Milligan's Ready Mix, for the past few years, has routinely grossed over $400,000.00. The question of compensation will be a matter of proof to be decided by the trier of fact." And yet, the law is clear that in a motion for summary judgment the non-moving party may not rest on mere denials in pleadings, but must present some evidence of a genuine issue of material fact. M.R.C.P. 56(e); Miller, 762 So.2d at 304(¶ 3). Timothy presents no evidence to justify his claims to $2 million or $2,000 per month in damages. Accordingly, the trial court properly granted defendants' motion for summary judgment regarding damages.[9] This issue is without merit.
6. Whether the trial court erred in failing to determine the amount of damages owed to Timothy for the use of his property.
¶ 36. The trial court found $2,000 per month compensation for use of *1078 Timothy's property by MRM was not a genuine issue of material fact because Timothy did not present any evidence explaining from where he derived this figure. After our review of the record in the prior issue, we agree. If the trial court finds no issue of material fact over a specific claim for damages, it is not the court's duty to find an alternative amount for damages other than the one requested. Furthermore, Timothy did not prove that he was damaged in any way by MRM's use of his property. Nor did he prove that he was unable to rent his property because of the defendants' actions. He merely alleges that several individuals were interested in renting a trailer on his property, without putting forth evidence that they were precluded from doing so because of any action by the defendants. Accordingly, this issue is without merit.

CONCLUSION
¶ 37. For the above stated reasons, we find that the trial court did not err in dismissing Timothy's claim of partial ownership in the family business, Milligan's Ready Mix, Inc., or the real property upon which the business is located. Because of Timothy's failure to establish a prima facie case for his claim to ownership, it was unnecessary for the trial court to determine the business' legal status at the time of Jackie's death. For the same reason, the trial court did not err in determining a chain of title of MRM's real property. Finally, Timothy failed to prove any entitlement to damages. Consequently, we find the trial court was not in error and affirm its decisions.
¶ 38. THE JUDGMENT OF THE CHANCERY COURT OF TISHOMINGO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] The business has operated in different forms as a family-owned business. In 1988, the business was officially incorporated as "Milligan's Ready Mix, Inc." Prior to this time, the business was known as "Milligan's Brothers Ready Mix, Inc." and "Milligan's Ready Mix." For clarity, when referring to the business in general, and not its specific legal name, we shall call it "MRM"; otherwise, we will specify its exact legal name or the name under which it was doing business.
[2] This was the business's original name before it became "Milligan's Brothers Ready Mix, Inc." The exact date of this name change is not apparent from the record.
[3] When the business was incorporated, it was named "Milligan's Ready Mix, Inc.," not "Milligan Brothers Ready Mix, Inc."
[4] It is undisputed that Ann Harwell, Kell Milligan's daughter, does not have an ownership interest in any form of MRM, nor does she seek one.
[5] Timothy had not reached fifty years of age at the time this suit was filed, thus the Woodruff property was still held in trust by his step-mother.
[6] Timothy does not dispute that any funds are due him as beneficiary of the note payable to Jackie.
[7] Since Mary Milligan was dismissed as a defendant, and Timothy has not appealed this issue, the term "defendants" hereinafter shall refer only to Milligan's Ready Mix, Inc. and Kelly Kirk Milligan.
[8] Apparently Timothy finds the 1986 warranty deed from his father to Milligan Brothers Ready Mix, Inc. as being unworthy of mention.
[9] In addition, while we find the trial court correctly dismissed the $2 million in damages on summary judgment due to lack of evidence, we note that once the trial court found, at the bench trial, that Timothy failed to establish a claim of ownership to the business, his claim to any amount of damages is moot.