LEE, P.J.,
for the Court.
¶ 1. This appeal stems from an order of the Madison County Chancery Court denying Ronald Thweatt’s (Ronald) complaint for partition of the marital home and granting Beverly Thweatt’s (Beverly) counter-complaint to remove Ronald’s name from the warranty deed. Ronald appeals the chancellor’s denial of his request for partition of the marital home. We find his challenge to be without merit and affirm the chancery court’s order.
FACTS
¶ 2. Ronald and Beverly have twice been married to each other. They first married on June 16, 1974, but divorced by order of the Madison County Chancery Court on November 21, 2002, based on irreconcilable differences. They remarried on June 16, 2004, but separated again during the first week of August 2004. The parties remain legally married to one another but have not lived together since August 2004.
¶ 3. When the parties divorced in 2002, Beverly received the marital home and approximately thirty-four acres as her sole property as part of the couple’s property settlement agreement executed by both parties. The parties reconciled; Ronald moved back into the original marital home; and they decided to sell both the home and surrounding acreage.[1] The marital home and surrounding property were sold in April 2004. Later that month, Beverly purchased the home in dispute located in Harvey Crossing outright and paid all sums connected with the purchase and closing with the proceeds from the sale of the original marital home.
¶ 4. The warranty deed for the Harvey Crossing home was executed on April 30, 2004. It shows that the home was deeded “unto Beverly T. Thweatt and husband, William R. Thweatt, as joint tenants with full rights of survivorship and not as tenants in common.” However, the parties were not married at that time, and they did not actually remarry until June 16, 2004. There is some dispute in the record concerning how Ronald’s name ended up on the warranty deed. Ronald testified at trial that Beverly asked the closing attorney to alter the warranty deed to include his name. Beverly testified that Ronald insisted that his name be added to the deed. She then explained that she did not object as they were planning on getting married, and she was too embarrassed to correct the attorney’s assumption that they had already done so. During the first week of August 2004, Ronald moved out of the home and moved in with his longtime paramour.[2] Ronald admitted moving out of the home at Harvey Crossing shortly after moving in, but he stated that he moved in with his mother and not another woman.
¶ 5. Ronald admitted that he paid no money for the purchase of the home at *1088 Harvey Crossing, and he had not paid any bills or upkeep expenses since its purchase. He argues, however, that he was entitled to proceeds from the sale of the Harvey Crossing home because when he gave Beverly sole ownership of the marital home from the first marriage, he essentially supplied her with the necessary funds to buy the Harvey Crossing home.
¶ 6. The chancellor found that Ronald was not entitled to any relief as he did not act in good faith when re-entering the bonds of matrimony with Beverly. She also found that Ronald had lived in the Harvey Crossing home for less than a month after the wedding and contributed no financial support to the household. This led to her determination that the Harvey Crossing home had not become a commingled marital asset from the second marriage of the parties.
¶ 7. The chancellor further held that Beverly only allowed Ronald’s name to be placed on the warranty deed as he had promised to marry her. The chancellor assumed that the fact that Ronald moved out so quickly after the wedding “belie[d] any notion of good faith intention.” Additionally, because Ronald did not act in good faith, but “in a fraudulent manner to obtain an interest in property he had previously given so freely away,” she ordered Ronald’s name removed from the warranty deed and the execution of any documents necessary to clear the cloud currently on the title of Beverly’s home.
¶ 8. Ronald appeals the chancellor’s findings arguing that she committed reversible error in declining to partition the Harvey Crossing home. He does not appeal the removal of his name from the warranty deed.
DISCUSSION
¶ 9. Ronald’s sole issue on appeal is whether the chancellor erred in declining to partition the Harvey Crossing home. “The standard of review for property partition cases is whether this Court finds manifest error in the decision of the chancellor, only then will this Court reverse the findings of the chancellor.” Georgian v. Harrington, 990 So.2d 813, 815-16(¶7) (Miss.Ct.App.2008) (quoting Lynn v. Lynn (In re Will of Lynn), 878 So.2d 1052, 1055(¶11) (Miss.Ct.App.2004)). “The sufficiency of the evidence is determined by the chancellor, who sits as finder of fact and makes determinations as to the weight and credibility of the evidence.” Peters v. Peters, 906 So.2d 64, 68(¶12) (Miss.Ct.App.2004). This Court has a limited standard of review with regard to a chancellor’s findings of fact. We will affirm a chancellor’s findings unless they are clearly erroneous, manifestly wrong, or an erroneous legal standard was applied. Sanderson v. Sanderson, 824 So.2d 623, 625-26(¶8) (Miss.2002). “A finding of fact is considered clearly erroneous when, even though there is evidence to support the finding, the reviewing court has a firm belief a mistake has been made.” Milligan v. Milligan, 956 So.2d 1066, 1071(¶11) (Miss.Ct.App.2007) (citing Tutor v. Pannell, 809 So.2d 748, 751(¶11) (Miss.Ct.App.2002)). “However, if a chancellor’s findings of fact are supported by substantial evidence, broad discretion is given to support her determination.” Id. at 1071-72(¶11).
¶ 10. Mississippi Code Annotated section 11-21-11 (Rev.2004), provides that:
If, upon hearing, the court be of the opinion that a sale of the lands, or any part thereof, will better promote the interest of all parties than a partition in kind, or if the court be satisfied that an equal division cannot be made, it shall order a sale of the lands, or such part thereof as may be deemed proper, and a division of the proceeds among the co- *1089 tenants according to their respective interests.
The parties stipulated at trial that the house was not capable of being partitioned in kind due to it being a house on a small lot in the subdivision of Harvey Crossing. Thus, the only issue for review is whether the chancellor’s denial of the partition by sale was an abuse of discretion, keeping in mind that Ronald did not appeal the chancellor’s order that his name be removed from the warranty deed and the parties stipulated that a partition in kind was not feasible.
¶ 11. “[A] separated couple, not yet divorced, may partition marital property held in joint tenancy....” Lenoir v. Lenoir, 611 So.2d 200, 203 (Miss.1992) (citing Trigg v. Trigg, 498 So.2d 334, 335 (Miss.1986)). As a threshold matter, Ronald had to prove that he had title to the Harvey Crossing home. It has been long held that “a court of equity will never grant relief when a the [sic] complainant’s title is denied or suspicious, until he has established his title at law.” Spight v. Waldron, 51 Miss. 356, 360-61 (1875). While it is true that the right to partition land owned through a common tenancy is an absolute and unconditioned right, Cheeks v. Herrington, 523 So.2d 1033, 1035 (Miss.1988), partition can only be made between those in actual or constructive possession. Price v. Crone, 44 Miss. 571, 577 (1871); see also Wirtz v. Gordon, 187 Miss. 866, 877, 184 So. 798, 803 (1938) (“there must be a tenancy in common to justify a decree of partition ... and the existence of a tenancy in common is dependent upon possession or the right to the possession of the land”). The chancellor has the power to determine all questions of title. Mississippi Code Annotated section 11-21-9 (Rev.2004) states that:
If the title of the plaintiffs seeking partition or sale of land for a division shall be controverted, it shall not be necessary for the court to dismiss the complaint, but the question of title shall be tried and determined in the suit and the court shall have power to determine all questions of title, and to remove all clouds upon the title, if any, of the lands whereof partition is sought and to apportion encumbrances, if partition be made of land encumbered and it be deemed proper to do so. The court may adjust the equities between and determine all claims of the several cotenants, as well as the equities and claims of encum-brancers.
Furthermore, a chancellor has the jurisdiction to remove clouds from title when a person is not the rightful owner. “Any person having the equitable title to land may, in like cases, file a bill to divest the legal title out of the person in whom the same may be vested, and to vest the same in the equitable owner.” Miss.Code Ann. § 11-17-31 (Rev.2004).
¶ 12. The chancellor in the present ease determined that Ronald did not have any type of possessory interest in the Harvey Crossing home and found that he did not act in good faith in having his name added to the warranty deed. Ronald did not appeal the portion of the chancellor’s order requiring his name to be removed from the warranty deed. Thus, the issue of whether he is a proper titleholder at law is not properly before this Court, and the issue is deemed waived on appeal. Gilmer v. State, 955 So.2d 829, 839 n. 2 (Miss.2007) (citing Excello Feed Milling Co. v. U.S. Fid. & Guar. Co., 145 Miss. 599, 608, 111 So. 94, 95-96 (1926)).
¶ 13. Notwithstanding this procedural bar, we find that the chancellor’s findings of fact and conclusions of law are supported by substantial evidence and were not an abuse of discretion. The chancellor noted that Beverly allowed Ron- *1090 aid’s name to be added to the warranty-deed based on the mistaken belief that Ronald was going to marry her and the home was to be them new marital home. The chancellor then ordered the deed to be reformed to exclude Ronald’s name based on proof that he had fraudulently induced Beverly to remarry him and then deserted the marriage within weeks of the ceremony. “In an action to reform a deed based on a mistake theory, the petitioner must demonstrate a mutual mistake among the parties or a unilateral mistake in combination with fraud or inequitable conduct on the part of the benefitting party.” McCoy v. McCoy, 611 So.2d 957, 961 (Miss.1992) (citing Perrien v. Mapp, 374 So.2d 794, 796 (Miss.1979) (overruled on other grounds)). The unilateral mistake and fraud must be proven beyond a reasonable doubt. Id.
¶ 14. It is undisputed that Ronald voluntarily quitclaimed all rights to the original marital home and acreage to Beverly during the couple’s 2002 divorce. In no way did he financially contribute to the purchase of the Harvey Crossing home. All monies came from the proceeds of the sale of the original marital home that belonged solely to Beverly. Ronald admitted that he left the Harvey Crossing home only three weeks after he remarried Beverly. Evidence was presented at trial that Ronald moved out of the Harvey Crossing home and moved into his girlfriend’s house. There has been no known attempt by Ronald to move back into the Harvey Crossing home. These facts support the chancellor’s determination that Ronald did not act in good faith in having his name added to the property.
¶ 15. Thus, it was not clearly erroneous for the chancellor to remove Ronald’s name from the warranty deed to remove the cloud on the title of Beverly’s home, nor was it clearly erroneous for the chancellor to deny Ronald’s request for partition. Because Beverly was able to prove a unilateral mistake was made in reliance on Ronald’s fraudulent representations, she is entitled to be the sole equitable and legal titleholder to the property. If Ronald’s name was allowed to remain on the warranty deed and the partition was allowed to take place with Ronald receiving a portion of the proceeds, he would be unjustly enriched. This would allow him to take proceeds from a home in which he had lived for only three weeks and in which he had never put any money or effort toward the purchase or upkeep. He voluntarily gave away his interest in the original marital home, and the fact that his mother helped in the purchase of the original home does not affect his rights to the proceeds from its sale when he had already deeded all of his interest in the original home to Beverly through the 2002 property settlement agreement. He cannot now claim that he is entitled to proceeds from the Harvey Crossing home based on his contributions to the original marital home.
¶ 16. Furthermore, the chancellor was correct in finding that the Harvey Crossing home had not been commingled into a marital asset. Because Ronald had deeded his entire interest in the original marital home to Beverly, he had no claim to any of the proceeds from the home and land when they were sold. He admitted this during trial. Thus, the Harvey Crossing home was bought with non-marital funds before the parties were remarried. This made the home non-marital property. Hemsley v. Hemsley, 639 So.2d 909, 914 (Miss.1994). Property should only be considered commingled and transformed from non-marital to marital if it has been commingled with marital assets or used for familial benefit. Bowen v. Bowen, 982 So.2d 385, 395(¶38) (Miss.2008). The couple did not use the property during the marriage except for during the first few weeks when they lived there together. From that point on, the couple *1091 has been separated, and Beverly has been the sole possessor of the property. Thus, the property was not used by the couple for any material familial benefit and should not be considered commingled. The only other indication that the home could have been marital property was that it was deeded to Ronald and Beverly as joint tenants with rights of survivorship. However, the chancellor properly found that the warranty deed’s inclusion of Ronald’s name was a result of fraud which allowed for the removal of his name from the deed. This issue is without merit.
CONCLUSION
¶ 17. For the above reasons, the judgment of the Madison County Chancery Court is affirmed.
¶ 18. THE JUDGMENT OF THE MADISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.

. It is not clear from the record exactly when the parties reconciled and Ronald moved back into the original marital home. Ronald testified that he thought that they were together for about six months from the time they reconciled until the time they separated the second time.

. The parties maintain that Ronald moved out approximately three weeks after they were remarried. However, if they were married on June 16, 2004, and Ronald left during the first week of August, there was more than a three-week lapse between the date of the marriage and the time he left. The chancellor’s findings of fact asserted that the parties moved into the house in July 2004, but there is no proof of this in the record. Nevertheless, the parties agree that Ronald lived in the house for only a very short time, and the discrepancy does not materially affect our analysis of this matter.